# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

SUNG GON KANG,

**Plaintiff,**

v.

CREDIT BUREAU CONNECTION, INC.,

**Defendant.**

CASE NO. 1:18-CV-01359-AWI-SKO

**ORDER DENYING MOTION TO DISMISS AND REQUEST FOR JUDICIAL NOTICE**

(Doc. Nos. 10, 13)

This is a lawsuit about a company that prepared and distributed a false consumer report about a consumer. The consumer is Plaintiff Sung Gon Kang, and the company that prepared and distributed the consumer report is Defendant Credit Bureau Connection, Inc.

Before the Court is Defendant's motion to dismiss Plaintiff's causes of action pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court will deny Defendant's motion for the reasons discussed below.

## I.  Background[1]

Plaintiff went to a car dealership in Huntington Beach, California to buy a car. After he selected the car that he wanted to buy, Plaintiff applied for a car loan from the dealership. The dealership, in deciding whether to extend credit to Plaintiff, ordered from Defendant at least two consumer reports about Plaintiff. Defendant then prepared the consumer reports and sold them to the dealership. Defendant included false information on the consumer reports that suggested that Plaintiff was designated by the Office of Foreign Assets Control ("OFAC") as a "Specially Designated National and Blocked Person" associated with North Korea.

OFAC is an executive agency of the Department of Treasury that administers and enforces economic trade sanctions based on United States foreign policy and national security goals against threats to national security, foreign policy, and the national economy. See Office of Foreign

---

[1] The facts in the background come from the complaint's factual allegations, which the Court construes as true. See Rio Props., Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1019 (9th Cir. 2002).

Assets Control v. Voices in Wilderness, 329 F. Supp. 2d 71, 74 (D.D.C. 2004); see also *Office of Foreign Assets Control – Sanctions Programs and Information*, U.S. DEPARTMENT OF TREASURY, https://www.treasury.gov/resource-center/sanctions/Pages/default.aspx (last visited March 12, 2019) (describing OFAC's responsibilities). OFAC's sanctions are directed towards terrorists, international narcotics traffickers, and persons involved in the proliferation of weapons of mass destruction, amongst others. See id. OFAC designates some of these individuals as Specially Designated Nationals and Blocked Persons ("SDNs"), and OFAC periodically publishes and updates its list of SDNs on its "SDN List," which is publicly available online. See 31 C.F.R. § Ch. V, App. A (describing OFAC's online publication of the SDN List); *Specially Designated Nationals And Blocked Persons List (SDN) Human Readable Lists*, U.S. DEPARTMENT OF TREASURY, http://www.treasury.gov/sdn (last visited March 12, 2019) (OFAC's public website that publishes the SDN List). The SDN List is important to financial institutions and lenders in the United States because, "[in most cases], it is unlawful to extend credit to a person whose name is on OFAC's SDN List." Cortez v. Trans Union, LLC, 617 F.3d 688, 701 (3d Cir. 2010).

Because the consumer reports sold by Defendant to the dealership falsely suggested that Plaintiff was on the SDN List, the dealership refused to extend credit to Plaintiff absent a co-signer. Plaintiff was "horrified and embarrassed" to be identified as an SDN associated with North Korea. Doc. No. 1 at ¶ 51. Plaintiff then contacted Defendant about the false information on the consumer reports, asking Defendant to "completely remove any misleading OFAC information" from the reports, and also asking Defendant to provide Plaintiff with a complete copy of Defendant's file about Plaintiff. Id. at ¶¶ 62-63. In response, a representative of Defendant called Plaintiff, telling Plaintiff that there was no OFAC information associated with Plaintiff. Plaintiff then received in the mail from Defendant a single sheet of paper that appeared to be a printout of Defendant's "Free OFAC Search" from Defendant's website. Id. at ¶ 65. The paper indicated that there was "no hit" for OFAC information associated with Plaintiff. Id. Plaintiff never received any other information from Defendant.

Plaintiff is not the only victim of Defendant's business practice of preparing and selling consumer reports with false OFAC information, according to Plaintiff's complaint. Rather, there

is a class of consumers that have been similarly victimized by Defendant's practice of intentionally including false OFAC information on consumer reports and then failing to provide requesting consumers with complete copies of their consumer files.

Based on these facts, Plaintiff filed this lawsuit against Defendant on behalf of himself and a class of similarly-situated consumers. Plaintiff pleaded five causes of action against Defendant, some under the federal Fair Credit Reporting Act[2] ("FCRA") and some under California's Consumer Credit Reporting Agencies Act[3] ("CCRAA"). The causes of action are as follows: (1) violation of § 1681g(a) of the FCRA, which requires consumer reporting agencies to provide consumers, upon request, with all information in the consumer's file at the time of the request; (2) violation of §§ 1785.10 and 1785.15 of the CCRAA, which require consumer credit reporting agencies to allow consumers, upon request, to visually inspect and receive a disclosure of all files maintained regarding the consumer at the time of the request; (3) violation of § 1681e(b) of the FCRA, which requires consumer reporting agencies to follow reasonable procedures to assure maximum possible accuracy of information when preparing consumer reports; (4) violation of § 1785.14(b) of the CCRAA, which requires consumer credit reporting agencies to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the consumer report relates; and (5) violation of § 1681i of the FCRA, which requires consumer reporting agencies to conduct a reasonable investigation into information in a consumer's file that is disputed by the consumer.

Defendant moved to dismiss all of Plaintiff's causes of action pursuant to Rule 12(b)(6). Due to the early stage of this lawsuit, discovery has not yet begun in earnest.

## II. Defendant's Rule 12(b)(6) Motion to Dismiss

### A.    Defendant's arguments

Defendant argues that all of Plaintiff's causes of action fail to state a claim for relief. Defendant bases this argument on two propositions. First, a required element of Plaintiff's FCRA claims is that Defendant must be a consumer reporting agency ("CRA"), and a required element of

---

[2] The FCRA is codified at 15 U.S.C. § 1681 *et seq.*
[3] The CCRAA is codified at Cal. Civ. Code § 1785.1 *et seq.*

Plaintiff's CCRAA claims is that Defendant must be a consumer credit reporting agency

("CCRA"). A CRA and a CCRA are defined legal terms under their respective statutes. See 15

U.S.C. § 1681a(f) (definition of a CRA under the FCRA); Cal. Civ. Code § 1785.3(d) (definition

of a CCRA under the CCRAA). Second, Defendant is neither a CRA nor a CCRAA. As will be

discussed below, it is only Defendant's second proposition that Plaintiff disputes.

Defendant tries to prove the truthfulness of the second proposition by relying on two

separate documents that Defendant filed in conjunction with the motion, neither of which were

referenced in or attached to the complaint: (1) the declaration of Darin Larsen, who is the co-

owner and COO of Defendant; and (2) a publication that Defendant alleges is from the Consumer

Financial Protection Bureau, titled "List of consumer reporting companies." See Doc. No. 12

(Larsen declaration); Doc. No. 13 (Defendant's request for judicial notice of Consumer Financial

Protection Bureau publication).

In the Larsen declaration, Larsen declared that Defendant is neither a CRA nor a CCRA

because Defendant does not meet the statutory definitions of a CRA or a CCRA. In an attempt to

prove this point, Larsen asserted the following:

> [Defendant] is and always has been only a reseller of credit reports and credit data
> from the three national Consumer Reporting Agencies . . . .
>
> . . . .
>
> [Defendant] has not at any time and does not for monetary fees, dues, or on a
> cooperative nonprofit basis, regularly engage in whole or in part in the practice of
> assembling or evaluating consumer credit information or other information on
> consumers for the purpose of furnishing consumer reports to third parties, and
> which uses any means or facility of interstate commerce for the purpose of
> preparing or furnishing consumer reports. [Defendant] has not at any time and
> does not compile, assemble, evaluate, maintain, control, or update any of the
> CRA's data that is provided from the CRA's in a consumer credit report. The
> CRA's gather and distribute consumer's credit history information, but [Defendant]
> does not. [Defendant] does not modify the credit report data, [Defendant] simply
> resells the CRA's credit report data through a software program that delivers the
> credit report to the end-user.

Doc. No. 12 at ¶¶ 2-3 (parenthetical in original).

In the publication allegedly from the Consumer Financial Protection Bureau — which

Defendant asks the Court to take judicial notice of pursuant to Federal Rule of Evidence 201 —

the publication appears to list several companies that are, according to the publication, CRAs. See

4

Doc. No. 13 at 8.[4]  Defendant suggests that the publication identifies all recognized CRAs, and Larsen declares that Defendant "is not and never has been on that list, since [Defendant] is not a CRA."  Doc. No. 12 at ¶ 4.

**B.**      **Plaintiff's arguments**

Plaintiff seems to agree with Defendant that a required element of Plaintiff's claims is that Defendant must be a CRA under the FCRA and a CCRA under the CCRAA.  But unlike Defendant, Plaintiff argues that whether Defendant is a CRA or CCRA is a question of fact that should not be proved and decided at the Rule 12(b)(6) phase with evidence, which is what Defendant attempts to do.  According to Plaintiff, the Court must construe the complaint's factual allegations as true; and when the factual allegations are construed as true, the complaint sufficiently pleads that Defendant is a CRA and CCRA.  On this basis, Plaintiff argues that the Court should deny Defendant's motion.

Plaintiff also argues that Defendant's efforts to prove that Defendant is neither a CRA nor a CCRA are flawed.  Specifically, Plaintiff argues that the Larsen declaration is unavailing because the declaration simply attempts to refute the complaint's well-pleaded factual allegations, which is improper at the Rule 12(b)(6) phase.  Additionally, Plaintiff argues that all of Plaintiff's causes of action are well-pleaded even if Defendant is a "reseller" of credit report data, as Larsen declares, because the FRCA and CCRAA do not exempt resellers from Plaintiff's causes of action.  Finally, Plaintiff argues that the publication allegedly from the Consumer Financial Protection Bureau is unavailing for at least three reasons: (1) the publication attempts to refute factual allegations in the complaint, which is improper at the Rule 12(b)(6) phase; (2) the publication's list of CRAs is not dispositive of whether a person is a CRA or a CCRA; and (3) the publication expressly states that its list of CRAs is not exhaustive and does not "reflect determinations as to whether any particular entity is subject to the Fair Credit Reporting Act."  Doc. No. 14 at 9 (quoting the Consumer Financial Protection Bureau publication).

---

[4]  Unless stated otherwise, page-number references in this order refer to CM/ECF page numbers, which are displayed in the top-right corner of filed documents.

# III.  Discussion

## A.    Legal standard for dismissal pursuant to Rule 12(b)(6).

Under Rule 12(b)(6), a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory.  See Mollett v. Netflix, Inc., 795 F.3d 1062, 1065 (9th Cir. 2015).  In reviewing a complaint under Rule 12(b)(6), all well-pleaded allegations of material fact are taken as true and construed in the light most favorable to the non-moving party.  Kwan v. SanMedica, Int'l, 854 F.3d 1088, 1096 (9th Cir. 2017).  However, complaints that offer no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Johnson v. Federal Home Loan Mortg. Corp., 793 F.3d 1005, 1008 (9th Cir. 2015).  The Court is "not required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Seven Arts Filmed Entm't, Ltd. v. Content Media Corp. PLC, 733 F.3d 1251, 1254 (9th Cir. 2013).

To avoid a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678; Mollett, 795 F.3d at 1065.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678; Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013).  "Plausibility" means "more than a sheer possibility," but less than a probability, and facts that are "merely consistent" with liability fall short of "plausibility." Iqbal, 556 U.S. at 678; Somers, 729 F.3d at 960.

The Ninth Circuit has distilled the following principles for Rule 12(b)(6) motions: (1) to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively; (2) the factual

allegations that are taken as true must plausibly suggest entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation. Levitt v. Yelp! Inc., 765 F.3d 1123, 1135 (9th Cir. 2014).

In assessing a motion to dismiss, courts may consider documents attached to the complaint, documents incorporated by reference in the complaint, or matters subject to judicial notice. In re NVIDIA Corp. Sec. Litig., 768 F.3d 1046, 1051 (9th Cir. 2014).

**B.** **The complaint's factual allegations sufficiently plead that Defendant is a CRA and CCRA.**

The parties seem to agree that a required element of Plaintiff's FCRA claims is that Defendant must be a CRA and a required element of Plaintiff's CCRAA claims is that Defendant must be a CCRA. Therefore, the single issue before the Court at this Rule 12(b)(6) juncture is whether Plaintiff's complaint sufficiently pleads that Defendant is a CRA and CCRA.

In an effort to regulate the consumer reporting industry, Congress enacted the FCRA and California enacted the CCRAA. The purpose of both the FCRA and CCRAA is to ensure that credit reporting agencies report accurate information, thereby protecting consumers from the transmission of inaccurate credit information. See 15 U.S.C. § 1681; Cal. Civ. Code § 1785.1(d). The FCRA provides a private right of action to consumers who are the victims of FCRA violations, and the CCRAA provides a private right of action to consumers who are the victims of CCRAA violations. See 15 U.S.C. §§ 1681n-1681p; Cal. Civ. Code § 1785.31. Clearly, the CCRAA is the California analogue to the FCRA, and the Ninth Circuit "operate[s] under the assumption that California courts would interpret the FCRA and CCRAA consistently." Carvalho v. Equifax Info. Servs., LLC, 629 F.3d 876, 890 (9th Cir. 2010).

The FCRA and CCRAA define the terms that are relevant to the Court's analysis with respect to Defendant's motion. The terms and their definitions are as follows:

- "Person" under both the FCRA and CCRAA:

    [A]any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity.[5]

---

[5] 15 U.S.C. § 1681a(b); Cal. Civ. Code § 1785.3(j).

- "Consumer report" under the FCRA:

  [A]ny written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for (A) credit or insurance to be used primarily for personal, family, or household purposes; (B) employment purposes; or (C) any other purpose authorized under section 1681b of this title.[6]

- "Consumer credit report" under the CCRAA:

  [A]ny written, oral, or other communication of any information by a consumer credit reporting agency bearing on a consumer's credit worthiness, credit standing, or credit capacity, which is used or is expected to be used, or collected in whole or in part, for the purpose of serving as a factor in establishing the consumer's eligibility for: (1) credit to be used primarily for personal, family, or household purposes, or (2) employment purposes, or (3) hiring of a dwelling unit, as defined in subdivision (c) of Section 1940, or (4) other purposes authorized in Section 1785.11.[7]

- "Consumer reporting agency" under the FCRA:

  [A]ny person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.[8]

- "Consumer credit reporting agency" under the CCRAA:

  [A]ny person who, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the business of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer credit reports to third parties, but does not include any governmental agency whose records are maintained primarily for traffic safety, law enforcement, or licensing purposes.[9]

Based on these definitions, the Court concludes that the complaint's factual allegations sufficiently plead that Defendant is a CRA under the FCRA and a CCRA under the CCRAA.  The complaint clearly alleges that Defendant is a "person."  See Doc. No. 1 at ¶ 8 ("Defendant Credit Bureau Connections, Inc. is a corporation . . . .").  And the complaint sufficiently alleges that that Defendant regularly assembled consumer credit information for fees or dues for the purpose of

---

[6] 15 U.S.C. § 1861(d)(1).
[7] Cal. Civ. Code § 1785.3(c).
[8] 15 U.S.C. § 1681a(f).
[9] Cal. Civ. Code § 1785.3(d).

8

furnishing "consumer reports" or "consumer credit reports" to third parties. <u>See id.</u> at ¶ 27 ("Defendant provides automobile and other vehicle dealers with credit and other information, selling consumer reports (commonly called 'credit reports') about thousands of consumers each year.") (parenthetical in original); <u>id.</u> at ¶ 47 ("Defendant prepared a consumer report purportedly about Plaintiff on the same day and sold it to Reeves Honda for a fee."); <u>id.</u> at ¶ 48 ("The consumer report Defendant prepared contained a section labelled 'Red Flag Compliance' and, underneath the words 'HIT OFAC Check,' included 'OFAC Search results for SUNG KANG' and a box containing . . . information purportedly pertaining to Plaintiff."); <u>id.</u> at ¶ 53 (alleging that the dealership "requested information from [Defendant] about Plaintiff again"); <u>id.</u> at ¶ 56 ("The Reeves Honda representative told Plaintiff that the information in [Defendant's consumer report] came from Experian Information Solutions, Inc., a prominent CRA."); <u>id.</u> at ¶ 60 ("Defendant had prepared the consumer report provided to Reeves Honda.").

Thus, Plaintiff's complaint sufficiently pleads that Defendant is a CRA under the FCRA and a CCRA under the CCRAA.

**C.** **The "evidence" filed by Defendant in conjunction with the motion is unavailing.**

In conjunction with filing its Rule 12(b)(6) motion to dismiss, Defendant filed the Larsen declaration and the publication allegedly from the Consumer Financial Protection Bureau. Defendant relied on these documents in its motion to prove that Defendant is neither a CRA nor a CCRA. Defendant's reliance on those documents at this Rule 12(b)(6) juncture is flawed and unavailing for at least two reasons.

First, as alluded to above, Defendant's reliance on the declaration and publication are inconsistent with the purpose and proper treatment of a Rule 12(b)(6) motion to dismiss. Dismissal under Rule 12(b)(6) is appropriate where there is "an absence of sufficient facts alleged to support a cognizable legal theory." <u>Taylor v. Yee</u>, 780 F.3d 928, 935 (9th Cir. 2015). To determine whether there are sufficient facts, the court "must accept all factual allegations in the complaint as true." <u>Id.</u> Additionally, the court may consider documents attached to the complaint and incorporated by reference in the complaint. <u>In re NVIDIA Corp. Sec. Litig.</u>, 768 F.3d at 1051. Yet, despite this black-letter legal standard, Defendant relied on the declaration and publication —

neither of which were attached to or incorporated by reference to the complaint — to dispute the complaint's factual allegations about Defendant being a CRA and CCRA. The Court, like several other courts, rejects the unsound invitation to use evidence at the Rule 12(b)(6) phase to decide whether the defendant is a CRA. See Frazier v. Experian Info. Sols., Inc., Case No. 18-cv-0067, 2018 WL 3785131, at *3 (D. Md. Aug. 9, 2018) ("Courts have held that a defendant's status as a CRA should be decided on a motion for summary judgment, not through a motion to dismiss.") (citing cases); Everts v. PMR Progressive LLC, Case No. 15-cv-02023, 2016 WL 1222821, at *3 (D. Ariz. Mar. 29, 2016) (denying a Rule 12(b)(6) motion because the plaintiff's complaint sufficiently alleged that the defendant was a CRA under the FCRA); Marricone v. Experian Info. Sols., Inc., Case No. 09-cv-1123, 2009 WL 3245417, at *1 (E.D. Pa. Oct. 6, 2009) (ruling that "whether an entity is acting as a consumer reporting agency in a particular situation is a fact-specific inquiry" that should be decided after discovery).

Second, Defendant's use of the publication and Defendant's request for the Court to take judicial notice of the publication are flawed. For one, Defendant's request does not specify what, exactly, Defendant wants the Court to judicially notice within the publication, which consists of approximately 36 pages of written text. The request merely asks the Court to take judicial notice of the publication. See Doc. No. 13. While the Court could take judicial notice of the fact that the publication exists, see Mack v. S. Bay Beer Distributors, Inc., 798 F.2d 1279, 1282 (9th Cir. 1986) (stating that a court may properly look beyond the complaint to matters of public record when deciding a Rule 12(b)(6) motion), the Court declines to do so because the fact that the publication exists is irrelevant and has no impact on whether Defendant is a CRA or CCRA. La Mirada Trucking, Inc. v. Teamsters Local Union 166, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., 538 F.2d 286, 289 (9th Cir. 1976) (finding no error where the district court refused to take judicial notice of an irrelevant fact). For another, based on the Court's review of the publication's contents, the publication actually hurts — not helps — Defendant's arguments. Defendant tries to use the publication to prove that Defendant is not a CRA or CCRA because Defendant is not listed in the publication. But in a section of the publication that Defendant failed to cite, the publication states that its list of CRAs "does not cover every company in the industry,"

"is not intended to be all-inclusive," and does not "reflect determinations as to whether any particular entity is subject to the Fair Credit Reporting Act." Doc. No. 13 at 8 n.1. These excerpts from the publication squarely rebuke Defendant's reliance on the publication.

Therefore, because Plaintiff's complaint sufficiently pleads that Defendant is a CRA under the FCRA and a CCRA under the CCRAA, the Court will deny Defendant's Rule 12(b)(6) motion to dismiss.

## **ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Defendant's Rule 12(b)(6) motion to dismiss Plaintiff's causes of action (Doc. No. 10) is DENIED; and

2. Defendant's request for judicial notice (Doc. No. 13) is DENIED.

IT IS SO ORDERED.

Dated:   March 19, 2019     _____

SENIOR  DISTRICT  JUDGE