# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA
# FRESNO DIVISION

SUNG GON KANG, individually and on behalf of others similarly situated,

    *Plaintiff*,

    *v.*

CREDIT BUREAU CONNECTION, INC.,

    *Defendant*.

Case No. 1:18-cv-01359-AWI-SKO

**ORDER DENYING DEFENDANT'S MOTION FOR PROTECTIVE ORDER**

(Doc. 56)

    This matter is before the Court on Defendant Credit Bureau Connection, Inc.'s motion for protective order filed on February 19, 2020.[1] (Doc. 56.) Plaintiff filed an opposition on March 4, 2020, (Doc. 57), and Defendant filed a reply brief on March 11, 2020, (Doc. 58). The Court reviewed the parties' papers and all supporting material and found the matter suitable for decision without oral argument. The hearing set for March 18, 2020, was therefore vacated. (*See* Doc. 62.) For the reasons set forth below, the motion is denied.

## I.    RELEVANT BACKGROUND

### A.    Procedural Background

    On October 2, 2018, Plaintiff filed this putative class action against Defendant alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681–1681x, and the California Consumer Credit Reporting Agencies Act ("CCRAA"), Cal. Civ. Code §§ 1785.1–1787.3. (Doc. 1.) Plaintiff alleges that Defendant provides businesses with consumer credit

---

[1] Defendant filed its motion five days after the Court-imposed deadline of February 14, 2020, (*see* Doc. 55 at 2). Based on Defendant's representations in the motion, (*see* Doc. 56 at 2 n.1), the Court finds excusable neglect under Federal Rule of Civil Procedure 6(b) and will allow Defendant's untimely filing and consider the merits of Defendant's motion. The parties are advised that future filings that disregard scheduling order deadlines or other Court-imposed filing deadlines may be denied on that basis.

Case No. 1:18-cv-01359-AWI-SKO

information, which may include whether a consumer is included on the United States Treasury Department's Office of Foreign Assets Control ("OFAC") list. (*Id.* ¶¶ 10–11, 26–27.) Among other consequences, inclusion on the OFAC list makes a consumer ineligible for credit in the United States. (*Id.* ¶¶ 11.) Defendant allegedly provided to businesses inaccurate information that consumers, including Plaintiff, were included on the OFAC list. (*Id.* ¶¶ 35–37, 48–50.) Plaintiff seeks to represent classes consisting of individuals "about whom Defendant . . . sold a consumer report to a third party" that included an OFAC Hit.[2] (*See id.* ¶¶ 70–73.)

**B.    Discovery Dispute**

On March 19, 2019, Defendant served answers and objections to Plaintiff's first set of written discovery requests. (*See* Doc. 57 at 4.) The discovery requests at issue here are as follows:

> **INTERROGATORY 5:** Identify all natural persons about whom You provided an OFAC Hit to a third party from October 2, 2011 to the present.
>
> **INTERROGATORY 6:** Identify the entity to which You provided each OFAC Hit you identified in Your response to Interrogatory 5 and the date of each.
>
> **REQUEST FOR PRODUCTION 3:** All documents and electronically stored information in Your possession, custody, or control concerning individuals about whom You reported an OFAC Hit to a third party from October 2, 2011 to the present.
>
> **REQUEST FOR PRODUCTION 7:** All documents and electronically stored information in Your possession, custody, or control concerning pertaining [sic] to Your policies and procedures concerning the accuracy of Your OFAC Hits in effect from October 2, 2011 to the present.

(Doc. 56 at 8–9.) Defendant objected to the requests, in part, because they are "unduly burdensome" and seek information "which is privileged against discovery on the basis of individual privacy rights[.]" (Doc. 56-1 at 6–7.)

On September 20, 2019, the Court held an informal discovery dispute conference. (*See* Docs. 36, 37.) Following the conference, the Court found the information requested relevant,

---

[2] As used in this order, "OFAC Hit" describes a consumer's credit information showing that the consumer is included on the OFAC list.

Case No. 1:18-cv-01359-AWI-SKO          – 2 –

granted Plaintiff's request for further responses to the discovery requests and directed the parties to meet and confer regarding whether the electronically stored information ("ESI") is reasonably accessible and obtainable without undue burden or cost. (Doc. 37 at 1.) Defendant filed objections to the Court's order pursuant to Federal Rule of Civil Procedure 72(a), (Doc. 38), which the assigned district judge overruled, (Doc. 44). On December 19, 2019, following a second informal discovery dispute, the Court directed Defendant to produce Chief Technology Officer Frank Larsen for deposition and deferred ruling on the ESI's accessibility until after the deposition. (Doc. 51 at 1–2.) Defendant filed the motion for protective order on February 19, 2020. (Doc. 56.)

## II. LEGAL STANDARDS

### A. Discovery Generally

Federal Rule of Civil Procedure 26 provides that parties:

> May obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). A party seeking a protective order has the burden to show the requested information should not be produced. Fed. R. Civ. P. 26(c)(1); *see also* Fed. R. Civ. P. 26(b)(2)(B).

### B. Discovery in the Class Action Context

Whether pre-certification discovery will be allowed "lies within the sound discretion of the trial court." *Kamm v. Cal. City Dev. Co.*, 509 F.2d 205, 209 (9th Cir. 1975). *See also Artis v. Deere & Co.*, 276 F.R.D. 348, 351 (N.D. Cal. 2011) (citing *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009)). The Ninth Circuit states that the "advisable practice" for district courts on pre-certification discovery, "is to afford litigants an opportunity to present evidence as to whether a class action was maintainable. And, the necessary antecedent to the

presentation of evidence is, in most cases, enough discovery to obtain the material, especially when the information is within the sole possession of the defendant." *Doninger v. Pac. Northwest Bell, Inc.*, 564 F.2d 1304, 1313 (9th Cir. 1977); *see also Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985); *Artis*, 276 F.R.D. at 351. A plaintiff is not required to make a prima facie Rule 23 showing to obtain pre-certification discovery. *See Kaminske v. JP Chase Bank N.A.*, No. SACV 09-00918 JVS (RNBx), 2010 WL 5782995, at *2 (C.D. Cal. May 21, 2010) ("[T]here is nothing in *Doninger* and *Mantolete* that suggests that a prima facie showing is mandatory in all cases, and it very well may be the case that courts routinely do not require such a showing"); *Robinson v. The Chefs' Warehouse*, Case No. 3:15-cv-05421-RS(KAW), 2017 WL 836943, at *2 (N.D. Cal. Mar. 3, 2017).

Concerning the identities and contact information of the putative class members, district courts in this Circuit have often found that "[a]s a general rule, before class certification has taken place, all parties are entitled to equal access to persons who potentially have an interest in or relevant knowledge of the subject of the action, but who are not yet parties." *Wiegele v. FedEx Ground Package Sys.*, No. 06-CV-01330-JM(POR), 2007 WL 628041, at *2 (S.D. Cal. Feb. 8, 2007) (quoting *Koo v. Rubio's Restaurants, Inc.*, 109 Cal.App.4th 719, 729 (2003)). For that reason, discovery of the putative class members' identities and contact information is routinely allowed. *See, e.g., Artis*, 276 F.R.D. at 352 ("The disclosure of names, addresses, and telephone numbers is a common practice in the class action context."); *Putman v. Eli Lilly & Co.*, 508 F. Supp. 2d 812, 814 (C.D. Cal. 2007) ("[I]t seems to the Court that contact with [class members] could well be useful to the plaintiff to determine, at minimum, the commonality and typically prongs of Rule 23.").

### III. DISCUSSION

#### A. The Court Previously Found That the Requested Information is Relevant and Subject to Pre-Certification Discovery

As a preliminary matter, the Court previously found the requested information relevant, (Doc. 37 at 1), and ordered it produced. The requested information—identities of potential class

Case No. 1:18-cv-01359-AWI-SKO – 4 –

members and related information and documents—is relevant for Rule 23 purposes and is "reasonably calculated to lead to relevant information regarding class certification, as it is necessary for [Plaintiff] to obtain evidence supporting numerosity, commonality, and typicality." *See Aldapa v. Fowler Packing Company, Inc.*, 310 F.R.D. 583, 587 (E.D. Cal. 2015). Thus, the requested information is discoverable at this stage,[3] Fed. R. Civ. P. 26(b)(1), and the Court proceeds to determine the accessibility of the ESI.

**B.  Evidence Before the Court**

Defendant has submitted declarations from Frank Larsen and Chief Operating Officer Darin Larsen. (Docs. 56-1, 56-2.) Darin Larsen states that Defendant would be able to produce the requested information but it would be "burdensome and oppressive[.]" (Doc. 56-1 at 12.) Darin Larsen states that the information is stored in an encrypted database, which has "no searchable capability"; to identify relevant information, Defendant would need to write two programs "at a maximum cost of over $45,000 dollars," then "manually review every single transaction"; the initial review, assuming eight hours per file, a minimum of five thousand files, and $75 per hour per data reviewer, would cost an estimated three million dollars; and Defendant's employees would also need to conduct a "re-review." (*Id.* at 13–15.)

Frank Larsen's declaration states that the decryption process would involve writing a program that would take approximately one or two weeks and cost a maximum of $14,000; after the data was decrypted, it would have to be "filtered" for responsive files, which would involve writing a second program "to perform some kind of sophisticated and/or multi-layered keyword search," take approximately three-to-five weeks and cost a maximum of $35,000; and the review process, assuming two minutes per file, a minimum of 1.25 million files, and $75 per hour per data reviewer, would cost approximately $3.125 million.[4] (Doc. 56-2 at 3–4.)

---

[3] Defendant appears to contend that the information is not relevant because Defendant "is not a Credit Reporting Agency" and thus the case has no merit. (Doc. 56 at 3.) However, on March 19, 2019, the assigned district judge denied Defendant's motion to dismiss on that basis and held that "the complaint's factual allegations sufficiently plead that Defendant is a [credit reporting agency]," (Doc. 20 at 8), and Defendant has not filed a motion for summary judgment.

[4] Neither Darin Larsen nor Frank Larsen specifically estimates how long it will take to review and produce the information once it is decrypted and filtered, but Frank Larsen states that "it would take a great deal of time[,]"

Plaintiff attached to his opposition a transcript of the January 15, 2020 deposition of Frank Larsen. (Doc. 57 at 5; Doc. 57-1.) Frank Larsen generally testified consistently with his declaration and confirmed that Defendant maintains a database of all consumer information processed, and that "OFAC data resides on [Defendant's] servers." (*See* Doc. 57-1 at 67–68.) Plaintiff also submitted a declaration of Jonathan Jaffe, "the founder and owner of Its-Your-Internet, a technology and ESI discovery consulting firm."[5] (Doc. 57-2.) Jaffe proposes an alternative method of identifying relevant files in Defendant's database and describes decryption of the entire database as "unnecessary," (*id.* at 2–3), but also endorses a version of Frank Larsen's proposed protocol, (*see* Doc. 57-1 at 133). Jaffe states that, contrary to Defendant's contention, "[c]ommercially available eDiscovery tools could . . . be used to perform an automated review [of Defendant's files] . . . locating OFAC Hit reports like Plaintiff's with minimal human oversight." (Doc. 57-2 at 3.) Defendant attached a supplemental declaration of Frank Larsen to its reply brief, in which Frank provides reasons that Jaffe's alternative proposal will not work. (Doc. 58-1 at 3.)

**C.  Defendant Has Not Shown that the ESI is Inaccessible Due to Undue Burden or Cost**

### 1. Legal Standards

The Federal Rules of Civil Procedure contain some constraints "on discovery's otherwise sprawling reach." *U.S. ex rel. Carter v. Bridgepoint Educ., Inc.*, 305 F.R.D. 225, 237 (E.D. Cal. 2015). Rule 26 states, in relevant part:

---

"would be the most time consuming part of the overall process," and estimates that it would involve "an approximate total of 41,667 man hours." (Doc. 56-2 at 4.) Darin Larsen states that the whole process of producing the information would take "many months of physical daily review[.]" (Doc. 56-1 at 12.)

[5] Defendant's evidentiary objections to Jaffe's declaration, (Doc. 60), are overruled. First, the best evidence rule is a "rule of preference, and not necessarily a rule of exclusion[,]" *Montoya v. Romero*, 956 F. Supp. 2d 1268, 1279 (D.N.M. 2013), and Jaffe's statements in his declaration simply repeat or add detail to his proposed procedures that were memorialized in a letter to Defendant's counsel, which Plaintiff submitted with his opposition. (*See* Doc. 57-1 at 133–34.) Jaffe lays sufficient foundation by explaining that he reviewed Frank Larsen's declaration and attended his deposition. (*See* Doc. 57-2 at 3.) Further, Defendant provides no explanation as to why any of the statements constitute hearsay or are vague, ambiguous, or unintelligible. Finally, as to Defendant's "improper expert opinion" objection, Jaffe's declaration was "submitted to assist the court in assessing the potential burden of producing discovery, not to 'help the trier of fact to understand the evidence or to determine a fact in issue.'" *Brum v. MarketSource, Inc.*, No. 2:17-cv-241-JAM-EFB, 2018 WL 3861558, at *5 n.3 (citing Fed. R. Evid. 702(a)).

> A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

Fed. R. Civ. P. 26(b)(2)(B). Under Rule 26(c), "[a] party . . . from whom discovery is sought may move for a protective order" based on "undue burden or expense[.]" Fed. R. Civ. P. 26(c)(1).

When considering a motion for protective order based on undue burden or cost related to ESI, the Court first must determine "whether the party opposing production has demonstrated that the ESI is not reasonably accessible due to undue burden or undue cost." *U.S. ex rel. Guardiola v. Renown Health*, No. 3:12-cv-00295-LRH-VPC, 2015 WL 5056726, at *2 (D. Nev. Aug. 15, 2015). If that showing is made, the Court next asks "whether the party seeking production has demonstrated, notwithstanding the inaccessibility, good cause for production[.]" *Id.* If the ESI is deemed inaccessible but the requesting party shows good cause for production, the Court "may consider a range of options, including cost-shifting, to alleviate the responding party's hardship." *Mikron Industries, Inc. v. Hurd Windows & Doors, Inc.*, No. C07-532RSL, 2008 WL 1805727, at *1 (W.D. Wash. Apr. 21, 2008) (citing Fed. R. Civ. P. 26(c)(1)).

Thus, Defendant must demonstrate that production of the ESI at issue would be unduly burdensome or costly. *See Pham v. Wal–Mart Stores, Inc.*, No. 2:11–cv–01148–KJD–GWF, 2011 WL 5508832, at *3 (D. Nev. Nov. 9, 2011) (citing *Residential Constructors, LLC v. Ace Prop. & Cas. Ins. Co.*, No. 2:05–cv–01318–BES–GWF, 2006 WL 3149362, at *9 (D. Nev. Nov. 1, 2006)). To satisfy this burden, Defendant "must provide sufficient detail regarding the time, money and procedures required to produce the requested documents." *Id*. The fact that production will be time consuming and expensive is usually not enough to grant a protective

order if the requested information is relevant and necessary to the discovery of admissible evidence. *In re Toys "R" Us-Delaware, Inc., Litigation*, No. ML 08-1980 MMM (FMOx), 2010 WL 4942645, at *6 (C.D. Cal. Jul. 29, 2010).

Although the format of ESI is relevant to the undue burden analysis, *see Zubulake v. UBS Warburg LLC*, 216 F.R.D. 280, 284 (S.D.N.Y. 2003); *Quinby v. WestLB AG*, 245 F.R.D. 94, 101–02 (S.D.N.Y. 2006), it is not dispositive and the Court must determine whether, under the particular facts of the case, the ESI is rendered inaccessible due to undue burden or cost. *Guardiola*, 2015 WL 5056726, at *2 ("[U]ndue burden is fact specific and no format is inaccessible *per se*"); *Al Otro Lado, Inc. v. Nielsen*, 328 F.R.D. 408, 417 (S.D. Cal. 2018) ("Yet with the declining practice of storing ESI as 'inactive data,' courts have shifted their focus to consideration of the cost and effort needed to retain allegedly inaccessible data.").

**2. Analysis**

Here, Defendant has not met its burden of making "particular and specific demonstration[s] of fact" that "provide sufficient detail" as to an alleged undue burden or cost involved in producing the ESI at issue. *See Tyler v. City of San Diego*, No. 14-cv-01179-GPC-JLB, 2015 WL 1955049, at *2 (S.D. Cal. Apr. 29, 2015).

First, Defendant represents that the decryption and filtering processes together will take four to seven weeks, involve writing two programs, and cost between $28,000 and $49,000. (*See* Doc. 56-2 at 3, 11–12.) These conclusory, unsupported statements are insufficient to meet Defendant's burden. *See Al Otro Lado*, 328 F.R.D. at 417; *Panola Land Buyers Ass'n v. Shuman*, 762 F.2d 1550, 1559 (11th Cir. 1985) (conclusory recitations of expense and burden are insufficient to demonstrate why requested discovery is objectionable). Even assuming Defendant's statements regarding the decryption and filtering processes are supportable, the processes described are common in litigation and are not unduly burdensome or costly under the circumstances. *See, e.g., Guardiola*, 2015 WL 5056726, at *6 (restoration cost of $136,000 was

not undue as "ESI is now a common part and cost of business" and businesses should give "thought to the risk of litigation and corresponding obligations" when considering how to store their ESI); *Al Otro Lado*, 328 F.R.D. at 419 ("That litigation may require a party to deviate from its normal data ESI management protocols is not unusual, or on its face, a viable basis for objection."). Further, contrary to Defendant's assertion, the fact that the database is currently encrypted and not "searchable" does not make it "inaccessible," *see Al Otro Lado*, 328 F.R.D. at 417, especially where, as here, the database is still used by Defendant and its customers and can be readily decrypted in as little as one week at a cost of several thousand dollars. *See Starbucks Corp. v. ADT Sec. Servs., Inc.*, No. 08-CV-900-JCC, 2009 WL 4730798, at *6 (W.D. Wash. Apr. 30, 2009) ("[I]t is difficult to conclude that the ESI sought in this case is 'not reasonably accessible' in light of the fact that the [effectively nonfunctional ESI archival system at issue] continues to be used by ADT personnel.").

Next, Defendant has not proved that "manually review[ing] every single transaction" will actually be necessary, and, if it is necessary, that it will be as arduous as Defendant claims.[6] (*See* Doc. 56 at 12.) Defendant was able to conduct a "specific search" to find Plaintiff's file in the database, (*see* Doc. 56-1 at 12), and has not shown that "specific search[es]" could not be conducted to find the files requested by Plaintiff. Frank Larsen also failed to refute Jaffe's statement that Defendant could conduct "an automated review . . . locating OFAC Hit reports like Plaintiff's with minimal human oversight" as opposed to a manual review. (*See* Doc. 57-2 at 3.)

---

[6] Defendant has also not shown that the burden of reviewing data should even be included in the analysis. Typically, costs of review are borne by the responding party regardless of the alleged inaccessibility of the data. *See Guardiola*, 2015 WL 5056726, at *4; *see also Zubulake*, 216 F.R.D. at 290 ("[W]here cost-shifting is appropriate, only the costs of restoration and searching should be shifted."). Defendant has not cited any authority stating otherwise.

Case No. 1:18-cv-01359-AWI-SKO – 9 –

Frank Larsen also explained that there are many possibilities for writing the filtering routine to limit the population of data to be reviewed, making a manual review (if necessary) more feasible. (*See* Doc. 57-1 at 101–04.) Defendant has also not shown why it would take a seemingly excessive eight hours to review a single file once it is decrypted and located, or explained the vastly different estimates as to the time required to review a file: Darin Larsen estimates it would take eight hours to review a file, and Frank Larsen estimates it would take two minutes.[7] (*Compare* Doc. 56-1 at 14 *with* Doc. 56-2 at 4.) Defendant is similarly unable to provide consistent estimates for the number of files that would need to be reviewed after the filtering process is complete, (*compare* Doc. 56-1 at 14 (estimating five thousand files would need to be reviewed) *with* Doc. 56-2 at 4 (estimating 1.25 million files would need to be reviewed)), and has not submitted any evidence of the number of files that would be involved other than contradictory and conclusory statements.

Thus, although Defendant repeatedly throws out figures exceeding three million dollars to create the appearance that the review process will be costly, it is unable to provide any supportable estimate of the number of files that will need to be reviewed or the cost of reviewing a file--which comprise the bases for the exorbitant cost estimate.[8] Indeed, the cost of the review process may be much less depending on the number of files filtered, and that is an incentive for Defendant to make the filtering process as effective as possible, as Frank Larsen testified, (*see* Doc. 57-1 at 94).

---

[7] The Court notes that if Darin Larsen's "conservative estimate," (Doc. 56-1 at 14), as to the number of files is used with Frank Larsen's estimate of the time required to review each file, the cost of the review process is reduced from $3.125 million to approximately $12,500 (5,000 files x (2/60 hours per file) = 166.67 hours x $75/hour = $12,500.25).

[8] The Court notes that Defendant has been on notice of these discovery requests since at least March 19, 2019, (*see* Doc. 57 at 4), and has been unable to narrow or support its estimates prior to filing this motion on February 19, 2020.

In sum, even if some portion of Defendant's representations about the processes described is supportable, the fact that there are numerous files, or Defendant has stored them in an unorganized fashion, does not excuse their production. *See Lindell v. Synthes USA*, No. 1:11-cv-02053-LJO-BAM, 2013 WL 3146806, at *7 (E.D. Cal. June 18, 2013) ("The fact that Defendants do not segregate the data in the precise manner it is requested and would be required to manually review some of the data entries does not make Plaintiff's requests inaccessible 'because of undue burden or cost'"); *Kozlowski v. Sears, Roebuck & Co.*, 73 F.R.D. 73, 76 (D. Mass. 1976) ("To allow a defendant whose business generates massive records to frustrate discovery by creating an inadequate filing system, and then claiming undue burden, would defeat the purposes of the discovery rules."). Further, the fact that the obligatory production of relevant information and documents will be time consuming and expensive is similarly not a sufficient reason to refuse production. *Pham*, 2011 WL 5508832, at *3 (citation omitted); *see also Brum*, 2018 WL 3861558, at *5. Accordingly, Defendant has not shown that the processes allegedly necessary to produce the requested information, considered in combination, are unduly burdensome or costly and has failed to show that the ESI is inaccessible on that basis.

**D. Even if Defendant Could Show that the ESI was Inaccessible, Plaintiff's Need for the Information Outweighs Any Burden or Cost Involved**

Even if Defendant could show that the ESI was not reasonably accessible, Rule 26(b)(2)(B) permits the Court to order production if the requesting party shows good cause. To decide whether good cause exists, courts look to the following factors: (1) the specificity of the discovery request; (2) the quantity of information available from other and more easily accessed sources; (3) the failure to produce relevant information that seems likely to have existed, but is no longer available on more easily accessed sources; (4) the likelihood of finding relevant, responsive information that cannot be obtained from other, more easily accessed sources; (5) predictions as to the importance and usefulness of further information; (6) the importance of the

issues at stake in the litigation; and (7) the parties' resources. *See Guardiola*, 2015 WL 5056726, at *6. Similarly, in the cost-shifting context, even if ESI is deemed "inaccessible," if the requesting party demonstrates "need and relevance that outweigh the costs and burdens of retrieving and processing this provably inaccessible information," the responding party must generally bear the full cost of production. *Carter*, 305 F.R.D. at 239 (citations omitted); *see also McPeek v. Ashcroft*, 202 F.R.D. 31, 34 (D.D.C. 2001) ("The more likely it is that the backup tape contains information that is relevant to a claim or defense, the fairer it is that . . . [the producing party] search at its own expense.").

Here, the usefulness and relevance factors—factors one, two, four, and five—weigh heavily in Plaintiff's favor: Plaintiff's discovery requests are specific, the information appears to be in the sole possession of Defendant and not available from any other source, it is highly likely that relevant, responsive information will be found in Defendant's database, and the information will be useful—and in fact is *essential*—to Plaintiff's class certification motion.[9] *See Guardiola*, 2015 WL 5056726, at *6. Thus, Plaintiff has demonstrated good cause to order production of the information notwithstanding any possible burden and has further demonstrated "need and relevance that outweighs the costs and burdens of retrieving and processing" the ESI. *See Carter*, 305 F.R.D. at 239; Fed. R. Civ. P. 26(b)(2)(B). Accordingly, Plaintiff would be entitled to production of the information with Defendant bearing the full cost of production, even if Defendant could show that the ESI was inaccessible based on undue burden or cost.

**E.     A Confidentiality Protective Order is Sufficient to Protect Any Privacy Rights**

Federal courts recognize a general right to privacy that can be raised in response to discovery requests. *Dowell v. Griffin*, 275 F.R.D. 613, 617 (S.D. Cal. 2011); *Artis v. Deere & Co.*, 276 F.R.D. 348, 352–53 (N.D.Cal.2011) (citing *Wiegele*, 2007 WL 628041, at *2).

---

[9] The remaining factors are relatively neutral, as the third factor does not apply and was not addressed by the parties, the issues at stake in the litigation are of moderate importance, *see Zubulake*, 216 F.R.D. at 289, and there is little information available to the Court as to the parties' relative resources. *See Guardiola*, 2015 WL 5056726, at *6.

However, the right of privacy is not an absolute bar to discovery. The resolution of a privacy objection requires a balancing of the need for the information against the claimed privacy right. *See Artis*, 276 F.R.D. at 352–53.

Defendant raised objections to the discovery requests based on privacy, although it devotes little of its briefing to the issue. (*See* Doc. 56-1 at 6.) The requests seek information including the contact information for individuals who had an OFAC Hit and any documents in Defendant's possession regarding those individuals. (*See* Doc. 56 at 8–9.) As stated above, the requested information is highly relevant to Plaintiff's claims, and the Court finds that Plaintiff's need for the information significantly outweighs any privacy rights in the information. *See Artis*, 276 F.R.D. at 353. Further, any privacy concerns can be adequately addressed by a confidentiality protective order. *See, e.g., Austin v. Foodliner, Inc.*, Case No. 16-cv-07185-HSG (DMR), 2018 WL 116894, at *2 (N.D. Cal. Mar. 6, 2018). Accordingly, the Court will direct the parties to file a stipulated confidentiality protective order, **that complies with Local Rule 141.1[10]** to cover the requested information.

### F. The Court Shall Modify the Case Schedule

The Court has broad discretion in modifying the schedule. *See Hunt v. County of Orange*, 672 F.3d 606, 616 (9th Cir. 2012) ("District courts have 'broad discretion to manage discovery and to control the course of litigation under Federal Rule of Civil Procedure 16.'" (citation omitted)). A scheduling order may be modified upon a showing of good cause. Fed. R. Civ. P. 16(b).

Under the current scheduling order, the class certification discovery deadline is May 6, 2020. (Doc. 55 at 2.) The Court finds good cause to modify the scheduling order to give Defendant sufficient time to produce the requested information, and to give Plaintiff sufficient time to conduct any further discovery necessary. As noted above, Defendant estimates it will

---

[10] The parties previously filed a request seeking Court approval of their stipulated protective order, (Doc. 46), which the Court denied without prejudice due to its failure to comply with Local Rule 141.1, (Doc. 47). The parties have not renewed their request to date. Thus, the parties are specifically **ordered to file a proposed confidentiality protective order that conforms to the previous protective order they filed, (Doc. 46), except with the identified deficiencies under Local Rule 141.1, (*see* Doc. 47), remedied.**

Case No. 1:18-cv-01359-AWI-SKO – 13 –

take approximately one or two weeks to decrypt the database, between three and five weeks to filter the information, and an indeterminate amount of time, possibly "many months" depending on the output of the filtering process, to review and produce the information. (*See* Doc. 56-1 at 12–15.) The Court will extend the scheduling deadlines to accommodate Defendant's efforts.

Good cause appearing, *see* Fed. Civ. P. 16(b), and to allow the parties sufficient time to complete class certification discovery, particularly in light of the national, regional and local public health emergency posed by the coronavirus (COVID-19) outbreak, *see* General Orders Nos. 611–613, the case schedule will be modified to continue the class certification discovery and briefing deadlines by 180 days to allow for Defendant to produce the information. **The parties shall meet and confer to agree upon a production schedule, accommodating Defendant's production efforts and Plaintiff's need to conduct additional discovery once the ESI is produced.** If either party fails to comply with this order the Court will entertain a request for sanctions.

### IV.     CONCLUSION AND ORDER

Accordingly, IT IS ORDERED:

1. Defendant's motion for protective order, (Doc. 56), is DENIED; and

2. The parties shall file a stipulated proposed confidentiality protective order covering the information to be produced by no later than seven (7) days after the date of service of this order.

It is further ORDERED that the case schedule (*see* Doc. 55) is MODIFIED as follows:

1. The class certification discovery deadline is continued to November 2, 2020.

2. The class certification motion filing deadline is continued to November 30, 2020.

3. The class certification opposition brief filing deadline is continued to December 28, 2020.

4. The class certification reply brief filing deadline is continued to January 12, 2021.

5. The motion for class certification shall be heard on February 1, 2021, at 1:30 p.m., in Courtroom 2 before the Honorable Anthony W. Ishii, Senior United States District Judge.

6. A status conference is set for April 6, 2021, at 9:30 a.m. in Courtroom 7 before United States Magistrate Judge Sheila K. Oberto. By no later than March 30, 2021, the parties shall file and email to skoorders@caed.uscourts.gov in MS Word format a report providing (a) dates agreed to by all counsel for all remaining deadlines and (b) an updated status of the case.

IT IS SO ORDERED.

Dated: **April 7, 2020**    /s/ *Sheila K. Oberto*
UNITED STATES MAGISTRATE JUDGE