# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **SUNG GON KANG,** | **CASE NO. 1:18-CV-01359-AWI-SKO** |
| **Plaintiff,** | |
| **v.** | **ORDER DENYING DEFENDANT'S OBJECTIONS TO MAGISTRATE JUDGE'S DISCOVERY ORDER** |
| **CREDIT BUREAU CONNECTION, INC.,** | |
| **Defendant.** | (Doc. No. 66) |

This is a lawsuit about a company that allegedly prepared and distributed a false consumer report about a consumer. The consumer is Plaintiff Sung Gon Kang ("Plaintiff"), and the company that prepared and distributed the consumer report is Defendant Credit Bureau Connection, Inc ("Defendant").

Now before the Court is Defendant's objections to the Magistrate Judge's order concerning a discovery dispute between Defendant and Plaintiff. See Doc. No. 66 (Defendant's objections); Doc. No. 63 (Magistrate Judge's discovery order). For the reasons discussed below, the Court will deny Defendant's objections.

## I. Background

According to Plaintiff's complaint, Plaintiff went to a car dealership in Huntington Beach, California to buy a car. After he selected the car that he wanted to buy, Plaintiff applied for a car loan from the dealership. The dealership, in deciding whether to extend credit to Plaintiff, ordered from Defendant at least two consumer reports about Plaintiff. Defendant then prepared the consumer reports and sold them to the dealership. Defendant included false information on the consumer reports that suggested that Plaintiff was designated by the Office of Foreign Assets Control ("OFAC") as a "Specially Designated National and Blocked Person" associated with North Korea.

OFAC is an executive agency of the United States Department of the Treasury that administers and enforces economic trade sanctions based on United States foreign policy and national security goals against threats to national security, foreign policy, and the national economy.  See Office of Foreign Assets Control v. Voices in Wilderness, 329 F. Supp. 2d 71, 74 (D.D.C. 2004); see also *Office of Foreign Assets Control – Sanctions Programs and Information*, U.S. DEPARTMENT OF TREASURY, https://www.treasury.gov/resource-center/sanctions/Pages/default.aspx (last visited May 14, 2020) (describing OFAC's responsibilities).  OFAC's sanctions are directed towards terrorists, international narcotics traffickers, and persons involved in the proliferation of weapons of mass destruction, amongst others.  See id.  OFAC designates some of these individuals as Specially Designated Nationals and Blocked Persons ("SDNs"), and OFAC periodically publishes and updates its list of SDNs on its "SDN List," which is publicly available online.  See 31 C.F.R. § Ch. V, App. A (describing OFAC's online publication of the SDN List); *Specially Designated Nationals And Blocked Persons List (SDN) Human Readable Lists*, U.S. DEPARTMENT OF TREASURY, http://www.treasury.gov/sdn (last visited May 14, 2020) (OFAC's public website that publishes the SDN List).  The SDN List is important to financial institutions and lenders in the United States because, "[in most cases], it is unlawful to extend credit to a person whose name is on OFAC's SDN List."  Cortez v. Trans Union, LLC, 617 F.3d 688, 701 (3d Cir. 2010).

Because the consumer reports sold by Defendant to the dealership falsely suggested that Plaintiff was on the SDN List, the dealership refused to extend credit to Plaintiff absent a co-signer.  Plaintiff was "horrified and embarrassed" to be identified as an SDN associated with North Korea.  Doc. No. 1 at ¶ 51.  Plaintiff then contacted Defendant about the false information on the consumer reports, asking Defendant to "completely remove any misleading OFAC information" from the reports, and also asking Defendant to provide Plaintiff with a complete copy of Defendant's file about Plaintiff.  Id. at ¶¶ 62-63.  In response, a representative of Defendant called Plaintiff, telling Plaintiff that there was no OFAC information associated with Plaintiff.  Plaintiff then received in the mail from Defendant a single sheet of paper that appeared to be a printout of Defendant's "Free OFAC Search" from Defendant's website.  Id. at ¶ 65.  The

1   paper indicated that there was "no hit" for OFAC information associated with Plaintiff.  Id.

2   Plaintiff never received any other information from Defendant.

3          Plaintiff is not the only victim of Defendant's business practice of preparing and selling

4   consumer reports to third parties with false OFAC information about consumers, according to

5   Plaintiff's complaint.  Rather, there is a class of consumers that have been similarly victimized by

6   Defendant's practice of including false OFAC information on consumer reports requested by third

7   parties and then failing to provide requesting consumers with complete copies of their consumer

8   files.

9          Based on these facts, Plaintiff filed this lawsuit against Defendant on behalf of himself and

10  a class of similarly-situated consumers.  Plaintiff pleaded five causes of action against Defendant,

11  some under the federal Fair Credit Reporting Act[1] ("FCRA") and some under California's

12  Consumer Credit Reporting Agencies Act[2] ("CCRAA").  The causes of action are as follows: (1)

13  violation of § 1681g(a) of the FCRA, which requires consumer reporting agencies to provide

14  consumers, upon request, with all information in the consumer's file at the time of the request; (2)

15  violation of §§ 1785.10 and 1785.15 of the CCRAA, which require consumer credit reporting

16  agencies to allow consumers, upon request, to visually inspect and receive a disclosure of all files

17  maintained regarding the consumer at the time of the request; (3) violation of § 1681e(b) of the

18  FCRA, which requires consumer reporting agencies to follow reasonable procedures to assure

19  maximum possible accuracy of information when preparing consumer reports; (4) violation of §

20  1785.14(b) of the CCRAA, which requires consumer credit reporting agencies to follow

21  reasonable procedures to assure maximum possible accuracy of the information concerning the

22  individual about whom the consumer report relates; and (5) violation of § 1681i of the FCRA,

23  which requires consumer reporting agencies to conduct a reasonable investigation into information

24  in a consumer's file that is disputed by the consumer.

25         During discovery in this lawsuit, Plaintiff and Defendant quarreled about whether and to

26  what extent Defendant is required to respond to certain document requests and interrogatories

27

28  [1]  The FCRA is codified at 15 U.S.C. § 1681 et seq.
    [2]  The CCRAA is codified at Cal. Civ. Code § 1785.1 et seq.

propounded by Plaintiff.  The document requests and interrogatories at the center of the quarrel, which are stated below, essentially ask Defendant to identify all instances since October 2, 2011, that Defendant reported to a third-party, such as a car dealership client, an "OFAC hit" for a consumer:

> **REQUEST FOR PRODUCTION 3**: All documents and electronically stored information in Your possession, custody, or control concerning individuals about whom You reported an OFAC Hit to a third party from October 2, 2011 to the present.
>
> **REQUEST FOR PRODUCTION 7**: All documents and electronically stored information in Your possession, custody, or control concerning pertaining [sic] to Your policies and procedures concerning the accuracy of Your OFAC Hits in effect from October 2, 2011 to the present.
>
> **INTERROGATORY 5**: Identify all natural persons about whom You provided an OFAC Hit to a third party from October 2, 2011 to the present.
>
> **INTERROGATORY 6**: Identify the entity to which You provided each OFAC Hit you identified in Your response to Interrogatory 5 and the date of each.

Doc. No. 56.

According to Defendant, Plaintiff's foregoing discovery requests are overly burdensome and costly, and on that basis Defendant moved the Magistrate Judge for a protective order under Rule 26(b)(2)(B), which states,

> A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost.  On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost.  If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C).  The court may specify conditions for the discovery.

Fed. R. Civ. Pro. 26(b)(2)(B).

In Defendant's motion, Defendant argued that a protective order is warranted because the information sought in Plaintiff's discovery requests is not reasonably accessible to Defendant. Defendant explained its position as follows.  Defendant has an electronically stored database of consumer reports and OFAC hits that Defendant provided to third-party clients, such as car dealerships.  The database is comprised of approximately 12.5 million records, but some of those records do not relate to OFAC hits.  The database is currently encrypted, meaning there is no

1    searchable capability of the database currently in place.  Therefore, in order for Defendant to

2    respond to Plaintiff's discovery requests, Defendant will have to undergo the following process,

3    which, according to Defendant, is unduly burdensome and costly.

4           First, Defendant will have to decrypt the database, which will require eighty hours of labor,

5    which will cost approximately $14,000 at $175/hour of labor.  Second, Defendant will have to

6    create a computer program to search the decrypted database for records "that in some way

7    reference OFAC," Doc. No. 56-2 at 2-3, which will require approximately 200 hours of labor,

8    which will cost approximately $35,000 at $175/hour of labor.  Third, assuming that the foregoing

9    search "outputted" an estimated 1.25 million records that reference OFAC, Doc. No. 56 at 12,

10   Defendant will have to manually review and analyze each of the 1.25 million records to determine

11   whether each record includes a "valid reference to OFAC that [is] at all relevant to this matter,"

12   Doc. No. 56-2 at 4, or, alternatively, is a false positive.  This third step will take approximately

13   41,667 hours of labor, which will cost $3,125,000 at $75/hour of labor.  So in sum, according to

14   Defendant, in order for Defendant to respond to Plaintiff's discovery requests, Defendant will

15   have to expend approximately 41,947 hours of labor at a cost of $3,174,000.  Defendant supported

16   this position with the declarations of Frank Larsen, the co-owner and chief technology officer of

17   Defendant, and Darin Larsen, the co-owner and chief operating office of Defendant.

18          Plaintiff opposed Defendant's motion for a protective order, arguing that the requested

19   discovery is accessible to Defendant without undue burden or expense.  According to Plaintiff, the

20   requested discovery is located on Defendant's database, which can be decrypted and searched.

21   Plaintiff supported this position with the declaration of Plaintiff's electronically-stored

22   information ("ESI") discovery consultant, Jonathan Jaffe.  Jaffe reviewed the declaration of Frank

23   Larson and attended Frank Larsen's deposition, wherein Frank Larsen discussed Defendant's

24   database and processes for decrypting and searching the database, and based on that foundation,

25   Jaffe declared that Defendant is capable of decrypting its database and then applying Defendant's

26   proprietary OFAC-matching algorithm to the database with minimal human oversight to search for

27   and identify all individuals in the database who may have been linked by Defendant with an

28   OFAC hit.

1    The Magistrate Judge reviewed the parties' briefing and evidence, and based on that

2    review, the Magistrate Judge ruled as follows.  First, the Magistrate Judge concluded that

3    Defendant failed to meet its "burden of making 'particular and specific demonstrations of fact'

4    that 'provide sufficient detail' as to an alleged undue burden or cost involved in producing the ESI

5    at issue." Doc. No. 63 at 8 (quoting Tyler v. City of San Diego, 2015 WL 1955049, at *2 (S.D.

6    Cal. Apr. 29, 2015)).  In making this conclusion, the Magistrate Judge noted that "conclusory

7    recitations of expense and burden are insufficient to demonstrate why requested discovery is

8    objectionable." Id. (citing Panola Land Buyers Ass'n v. Shuman, 762 F.2d 1550, 1559 (11th Cir.

9    1985)).

10    Next, the Magistrate Judge assumed for the sake of argument that Defendant had met its

11    foregoing burden — but even when operating on this assumption, the Magistrate Judge concluded

12    that the aforementioned decrypting and searching processes "are common in litigation and are not

13    unduly burdensome or costly under the circumstances." Id.  The Magistrate Judge based this

14    conclusion on her factual findings that Defendant's database was capable of being (1) decrypted

15    and (2) searched for responsive records using "an automated review . . . locating OFAC Hit reports .

16    . . with minimal human oversight," as opposed to a manual review.  Id. at 9 (quoting Decl. of Jonathan

17    Jaffe, Doc. No. 57-2).  The Magistrate Judge based these factual findings on the testimony of Jaffe,

18    who declared that it is possible to decrypt and conduct an automated review of the database, and Frank

19    Larsen, who testified it is possible to decrypt the database and various search routines can then be

20    attempted to limit the search results.

21    Next, the Magistrate Judge assumed for the sake of argument that the requested discovery

22    is not reasonably accessible to Defendant — but even when operating on this assumption, the

23    Magistrate Judge concluded that good cause exists to order Defendant to produce the discovery

24    notwithstanding any possible burden.  The Magistrate Judge based this conclusion on the

25    following findings: (1) Plaintiff's discovery requests are specific; (2) the requested discovery is in

26    the sole possession of Defendant; and (3) it is highly likely that the requested discovery will be

27    relevant, useful, and "essential" to the issue of class certification, and this is because the requested

28    discovery will identify the size and members of the putative class.  Id. at 12.

1    Ultimately, for the foregoing reasons, the Magistrate Judge denied Defendant's motion for

2  a protective order.  Defendant then objected to the Magistrate Judge's order, asking the District

3  Court Judge to issue a protective order for Defendant against Plaintiff's discovery requests.

## II.   Discussion

### A.   Legal standard for reconsideration of Magistrate Judge's order under Rule 72(a).

6    Magistrate judges in the Eastern District of California hear and determine certain pretrial

7  matters pursuant to the Federal Magistrates Act of 1968, 28 U.S.C. 636.  Pretrial matters include

8  discovery disputes, which magistrate judges are authorized to handle in the Eastern District of

9  California pursuant to Local Rule 302 and Local Rule 303.

10    If a party objects to a non-dispositive pretrial ruling by a magistrate judge, then the district

11  court judge will review or reconsider the ruling under the "clearly erroneous or contrary to law"

12  standard.  28 U.S.C. § 636(b)(1)(A); Rule 72(a); L.R. 303(f); Mavrix Photographs, LLC v.

13  Livejournal, Inc., 873 F.3d 1045, 1051 (9th Cir. 2017) (citing Rivera v. NIBCO, Inc., 364 F.3d

14  1057, 1063 (9th Cir. 2004)).

15    A magistrate judge's factual findings or discretionary decisions are "clearly erroneous"

16  when the district court judge is left with the definite and firm conviction that a mistake has been

17  committed.  Security Farms v. International Bhd. of Teamsters, 124 F.3d 999, 1014 (9th Cir.

18  1997).  However, this standard is significantly deferential, and the district court judge "may not

19  simply substitute its judgment" for that of the magistrate judge.  Grimes v. City of San Francisco,

20  951 F.2d 236, 241 (9th Cir. 1991).

21    Unlike the clearly erroneous standard, the contrary to law standard "allows independent

22  plenary review of purely legal determinations by the magistrate judge."  Haines v. Liggett Group,

23  Inc., 975 F.2d 81, 91 (3rd Cir. 1992); Osband v. Woodford, 290 F.3d 1036, 1041 (9th Cir. 2002)

24  (under 28 U.S.C. § 636(b)(1)(A), questions of law are reviewed de novo); cf. Anderson v. Equifax

25  Info. Services LLC, 2007 WL 2412249, at *1 (D. Or. 2007) ("Though Section 636(b)(1)(A) has

26  been interpreted to permit de novo review of the legal findings of a magistrate judge, magistrate

27  judges are given broad discretion on discovery matters and should not be overruled absent a

28  showing of clear abuse of discretion."); Pinzon v. Jensen, 2011 WL 3584778, at *2 (E.D. Cal.

Aug. 15, 2011) (Ishii, J.) (same).  "An order is contrary to law when it fails to apply or misapplies

relevant statutes, case law, or rules of procedure."  <u>Cochran v. Aguirre</u>, 2017 WL 2505230, at *1

(E.D. Cal. June 9, 2017); <u>Robinson v. Adams</u>, 2015 WL 139514, at *1 (E.D. Cal. Jan. 9, 2015);

<u>Knutson v. Blue Cross and Blue Shield of Minn.</u>, 254 F.R.D. 553, 556 (D. Minn. 2008); <u>Rathgaber

v. Town of Oyster Bay</u>, 492 F.Supp.2d 130, 137 (E.D.N.Y. 2007); <u>Surles v. Air France</u>, 210

F.Supp.2d 501, 502 (S.D.N.Y. 2001); <u>see also</u> <u>Adolph Coors Co. v. Wallace</u>, 570 F.Supp. 202,

205 (N.D. Cal. 1983) ("Thus, while we may review magistral findings of fact, subject only to the

'clearly erroneous' standard, we may overturn any conclusions of law which contradict or ignore

applicable precepts of law, as found in the Constitution, statutes or case precedent.").

**B.   Discussion.**

**_1.     Defendant failed to meet its burden of showing undue burden and cost._**

The Magistrate Judge concluded that Defendant "has not met its burden of making

'particular and specific demonstrations of fact' that 'provide sufficient detail' as to an alleged

undue burden or cost involved in producing the ESI at issue," Doc. No. 63 at 8 (citations omitted),

and Defendant argues that this conclusion is erroneous.  According to Defendant, the Magistrate

Judge erred because she failed to accept the fact that Defendant, if required to respond to the

requested discovery, will have to manually review approximately 1.25 million records to

determine whether each record "include[es] a valid reference to OFAC that [is] at all relevant to

this matter," Doc. No. 66 at 8, and that manual review for Defendant will take approximately

41,667 hours of labor, which will cost $3,125,000 at $75/hour of labor.

Defendant's argument is unavailing.  In Defendant's briefing before the Magistrate Judge,

Defendant repeatedly asserted that Defendant will have to use an automated computer function to

filter its database of 12.5 million records down to an estimated 1.25 million records that "in some

way reference OFAC," and from there Defendant will have to "[p]erform a manual review process

of the remaining [1.25 million] output" to identify "valid" OFAC hits, which will take

approximately 41,667 hours of labor and cost $3,125,000.  <u>See, e.g.</u>, Doc. No. 56-2 at 2-3.  The

Magistrate Judge was aware of these assertions from Defendant, but the Magistrate Judge found

these assertions to be unconvincing and unsupported.  The Magistrate Judge stated, "Defendant

8

has not proved that manually reviewing every single transaction will actually be necessary, and, if it is necessary, that it will be as arduous as Defendant claims." Doc. No. 63. The Magistrate Judge based this finding on, in part, the declaration of Plaintiff's ESI discovery consultant, Jaffe, who declared that it is possible to conduct an automated review of Defendant's database with minimal human oversight to locate OFAC hit reports, and the deposition testimony of Frank Larsen, who testified that various search routines can be performed to limit the search results.

The Magistrate Judge's foregoing analysis was neither clearly erroneous nor contrary to law. The Court has thoroughly reviewed the record that was before the Magistrate Judge, and after reviewing that record, the Court agrees with the Magistrate Judge that Defendant failed to clearly and persuasively explain why Defendant will have to manually review each of the 1.25 million records, as opposed to performing an automated review of the 1.25 million records. While it may be true that Defendant wants to review the 1.25 million records to separate the "valid" OFAC hits from the "false positives" — i.e., records that reference OFAC but are not actually "valid" OFAC hits[3] — it remains true that Defendant failed to carry its burden of clearly explaining and persuasively demonstrating why the review of the 1.25 million records cannot be performed primarily by computer automation, such as through keyword searches and other automated filtering functions.[4] It is insufficient to simply assert, as Frank Larsen did, that "you could not develop any software or technology to decipher the results to determine if each output record included a valid reference to OFAC that was at all relevant to this matter," Doc. No. 56-2 at 4, especially when it is clear that the decrypted database is searchable and filterable. Consequently, the Magistrate Judge did not err when she rejected Defendant's assertion that the review of the 1.25 million records will take 41,947 labor hours and cost $3,174,000.

---

[3] Incidentally, while the Court does not doubt that some of the 1.25 million OFAC-reference records are or contain false positives, Defendant failed to clearly articulate its definition of a "valid" OFAC hit.

[4] While Defendant clearly wants to review the 1.25 million OFAC-reference records before producing the records to Plaintiffs, the Magistrate Judge clearly ruled that even if it were true that Defendant will have to spend 41,947 labor hours to perform that review, Defendant "has not shown that the burden of reviewing data should even be included in the [undue burden] analysis." Doc. No. 63 at 9 n.6. The Magistrate Judge continued, "Typically, costs of review are borne by the responding party regardless of the alleged inaccessibility of the data," citing U.S. ex rel. Guardiola v. Renown Health, 2015 WL 5056726, at *4 (D. Nev. Aug. 25, 2015); Zubulake v. UBS Warburg LLC, 216 F.R.D. 280, 290 (S.D.N.Y. 2003), and "Defendant has not cited any authority stating otherwise." Doc. No. 63 at 9 n.6. Defendant did not challenge this ruling in its objections to the Magistrate Judge's order, so this ruling stands as another independent reason for denying Defendant's motion for a protective order.

1    Next, the Court will briefly comment on the quality of Defendant's briefing that was filed

2    with the Magistrate Judge, and the Court will do so only because it relates to Defendant's attacks

3    on the Magistrate Judge's factual analysis.  According to Defendant, the Magistrate Judge

4    "mischaracterized and misinterpreted" Defendant's evidence despite Defendant's "attempt[s] in

5    earnest to educate" the Magistrate Judge.  Doc. No. 66 at 2.  Presumably Defendant's reference to

6    its "attempts to educate" is a reference to Defendant's written briefing.[5]  Regardless of whether

7    Defendant's briefing is earnest, what is certain is that Defendant's briefing failed to clearly explain

8    and articulate the relevant facts about the database and related search and filtering processes —

9    and this is likely the cause for any factual misunderstandings held by the Magistrate Judge.  The

10   following example illustrates this point.

11   The Magistrate Judge found that Defendant's two primary witnesses, Frank Larsen and

12   Darin Larsen, submitted contradictory testimony about the amount of ESI that needed to be

13   manually reviewed by Defendant and the amount of time to complete the review.  The Magistrate

14   Judge stated,

> Defendant has also not shown why it would take a seemingly excessive eight hours
> to review a single file once it is decrypted and located, or explained the vastly
> different estimates as to the time required to review a file: Darin Larsen estimates it
> would take eight hours to review a file, and Frank Larsen estimates it would take
> two minutes.  Defendant is similarly unable to provide consistent estimates for the
> number of files that would need to be reviewed after the filtering process is
> complete, (compare [Darin Larsen declaration] (estimating five thousand files
> would need to be reviewed) with [Frank Larsen declaration (estimating 1.25
> million files would need to be reviewed)), and has not submitted any evidence of
> the number of files that would be involved other than contradictory and conclusory
> statements.

21   Doc. No. 63 at 10 (parentheticals in original; brackets added).

22   In its objections to the Magistrate Judge's order, Defendant attacked the Magistrate Judge

23   for incorrectly interpreting Darin Larsen's and Frank Larsen's testimony.  Specifically, Defendant

24   attacked the Magistrate Judge for failing to recognize that the term "files" as used by Darin Larsen

25   refers to Defendant's "client files," whereas the term "records" as used by Frank Larsen refers to a

26   "per database record," which is synonymous with a single consumer record.  Doc. No. 66 at 8-9.

27   In other words, Darin Larsen's reference to a client "file" refers to, for example, Defendant's file

28
_____

[5] The Magistrate Judge did not hold a hearing on Defendant's motion for a protective order.  See Doc. No. 63.

for a single car dealership client, and within that single client file exist multiple "records" of consumers who requested credit through that dealership.   Therefore, according to Defendant, Darin Larsen's reference to 5,000 client files does not contradict Frank Larsen's reference to 1.25 million records, and Darin Larsen's estimate of eight hours of labor to review a file is not at odds with Frank Larsen's estimate of two minutes of labor to review a record.

While the Magistrate Judge may have misunderstood Darin Larsen's or Frank Larsen's references to "files" and "records," that misunderstanding was the fault of Defendant, not the Magistrate Judge.  Defendant failed to clearly explain to the Magistrate Judge the distinction between "files" and "records" — terms that were repeatedly used but not defined by Defendant. See, e.g., Doc. No. 56 at 10 (Defendant's motion for protective order using the terms "file" and "records" interchangeably and without definition: "Also, the initial review would require, on average, approximately eight (8) hours per third party file.  The exact number of records for which would need to be reviewed is unknown at this time, but it is believe that number would be very substantial.") (emphasis added).  Thus, by attacking the Magistrate Judge's factual misunderstandings about the Defendant's database, Defendant is only shining a mirror on the vagueness and obscurity in Defendant's briefing.

### 2.   It was not contrary to law for the Magistrate Judge to overrule of Defendant's objection to Jaffe's foundation.

As noted above, Plaintiff's ESI discovery consultant, Jaffe, declared that it was possible and manageable for Defendant to retrieve the requested discovery from its database using standard automated e-discovery methods that would largely obviate the need for a manual review.  Plaintiff objected to Jaffe's testimony "on the grounds that it lacks foundation in that it fails to establish that [Jaffe] has personal knowledge of the facts to which he is testifying as he has no information on the encrypted data base or how to decrypt the database."  Doc. No. 60.  The Magistrate Judge overruled Defendant's objection because "Jaffe lays sufficient foundation by explaining that he reviewed Frank Larsen's declaration and attended his deposition."  Doc. No. 63 at 6 n.5.  The Magistrate Judge then relied, in part, on Jaffe's declaration to find that it is possible and manageable for Defendant to conduct an automated review of the database with minimal human oversight.

Defendant argues that the Magistrate Judge erred by overruling its foundation objection to Jaffe's testimony.  The Court disagrees.  Because Jaffe is familiar with Frank Larsen's deposition testimony and declaration, wherein Frank Larsen discussed Defendant's database and the processes and capabilities for decrypting and searching the database, the Magistrate Judge did not err in concluding that Jaffe possessed sufficient foundation to testify about Defendant's database.[6]  See Fed. R. Evid. 702(b) (stating that an expert witness may testify in the form of an opinion or otherwise if "the testimony is based on sufficient facts or data").  See also Brum v. MarketSource, Inc., 2018 WL 3861558, at *5 n.3 (E.D. Cal. Aug. 14, 2018) (indicating that an expert declaration that was being considered only for the purpose of assisting the court in assessing the potential burden of producing discovery, as opposed to "help[ing] the trier of fact to understand the evidence or to determine a fact in issue," need not satisfy Fed. R. Evid. 702).

### 3. *Plaintiff's amount of damages does not undermine the Magistrate Judge's discovery order.*

Defendant contends that the Magistrate Judge's order denying the protective order was contrary to law because the evidence shows that Plaintiff suffered no damages.  According to Defendant, Plaintiff suffered no damages because Plaintiff admitted in his deposition that Defendant's alleged unlawful conduct did not cause Plaintiff to suffer any loss of income, loss of employment, or loss of credit.

The Court rejects Defendant's argument.  Whether evidence proves that Plaintiff suffered alleged damages is a merits question that should be decided by summary judgment or trial, but it is not a consideration that impacts the scope of discovery under Rule 26(b)(1).  See Fed. R. Civ. P. 26(b)(1) (stating that the scope of discovery is defined by the considerations of "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.").  This is particularly true here because the requested discovery is relevant to determining issues of class certification, such as the size

---

[6]  Additionally, Jaffe declared that he has extensive experience working with ESI in the discovery-litigation context.  See Doc. No. 57-2 at ¶ 2.

1    and members of the putative class.  See Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)

2    ("Nor is discovery limited to the merits of a case, for a variety of fact-oriented issues may arise during

3    litigation that are not related to the merits.); id. at 351 n.13 ("Similarly, discovery often has been used

4    to illuminate issues upon which a district court must pass in deciding whether a suit should proceed as

5    a class action under Rule 23, such as numerosity, common questions, and adequacy of

6    representation.").

7            Additionally, even if the Court were to consider the potential merits of Plaintiff's claims as a

8    limitation on Plaintiff's scope of discovery, Defendant has failed to persuade the Court that Plaintiff

9    has not suffered damages.  See Ramirez v. TransUnion LLC, 951 F.3d 1008, 1027 (9th Cir. 2020)

10   (mentioning "reputational harm" to a consumer as a type of harm under the FCRA that "inevitably

11   results from disseminating [false OFAC] information to a potential creditor," and stating that "the

12   reports available to numerous potential creditors and employers — coupled with the highly sensitive

13   and distressing nature of the OFAC alerts disclosed to the consumers, the risk of third-party access [the

14   credit reporting agency] created through its dealings with [the credit reporting agency's third-party

15   vendor], and the federal government's awareness of the alerts — is sufficient to show a material risk of

16   harm to the concrete interests of all class members.").

## ORDER

18           Accordingly, IT IS HEREBY ORDERED that Defendant's objections (Doc. No. 66) to the

19   Magistrate Judge's discovery order are DENIED.

20

21   IT IS SO ORDERED.

22   Dated:  __May 19, 2020__                    _____

23                                                SENIOR  DISTRICT  JUDGE