**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

**SUNG GON KANG,**

**Plaintiff,**

**v.**

**CREDIT BUREAU CONNECTION, INC.,**

**Defendant.**

**CASE NO. 1:18-CV-01359-AWI-SKO**

**ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

(Doc. No. 81)

Plaintiff Sung Gon Kang alleges that Defendant Credit Bureau Connection, Inc., caused him injury in its violation of several state and federal consumer credit reporting statutes. Credit Bureau now moves for summary judgment under Federal Rule of Civil Procedure 56. For the following reasons, the Court will deny Credit Bureau's motion.

## BACKGROUND[1]

In November 2017, Kang sought to buy a car from an automobile dealership in Huntington Beach, California. Doc. No. 85-1, ¶ 19. When Kang applied for a loan to finance his purchase, the dealership conducted a credit check using the services of Credit Bureau. Id. Kang represents that the dealership informed him that it would not be able to extend him credit without a co-signer because the credit check showed that he was an "OFAC hit" with a North Korea-related affiliation. Kang Dep. at 40, 50, 55 (Doc. No. 85-8). (As discussed in more detail below, this reference goes

[1] The facts set forth below are taken in part from Kang's response to Credit Bureau's statement of undisputed facts, which shows exactly where the parties' factual disputes lie. Doc. No. 85-1. The remaining facts are drawn from evidence presented by the parties in their summary judgment briefing.

to the United States Treasury Department's Office of Foreign Assets Control ("OFAC") and its list of entities and individuals with whom United States persons are generally prohibited from doing business.) Kang was able to secure the loan with his father serving as a co-signer, but he felt "angry," "mad," and "embarrassed" to be "hit with the OFAC" and to be identified as a person affiliated with North Korea. Id. at 40, 55. He later returned to the dealership and requested the credit check documents. Id. at 56. The dealership ordered a second credit check after explaining to Kang that it no longer had the original documents. Id. at 46–49.

Although the parties use slightly different terminology to describe the evidence, they have each produced the same two OFAC-related documents that they represent the credit checks produced. Doc. Nos. 82-4 at 4–5; 85-9; 85-10. The Court will refer to this evidence as the "OFAC Check documents" throughout this order. Other than Kang's identifying information in the upper left-hand corner, the top line of these one-page documents reads "Red Flag Compliance," beneath which is provided: "Pursuant to your company's Identity Theft Protection Program, the following Red Flag Indicators shown below may necessitate further required action(s)." Underneath this information the documents state "HIT" above the words "OFAC Check."[2] Below this, a checked box accompanies the following text: "I have reviewed and determined this OFAC HIT to be a false positive - CLEARED." Further down, each document contains a section titled "OFAC Search results for SUNG KANG," with different timestamps corresponding to the separately ordered credit checks. The first OFAC Check document—produced during Kang's original visit to the dealership—includes a single search result for a North Korean citizen and passport-holder with a name of "KANG, Song Nam," birth year of 1962, title of "Bureau Director," link to "Ministry of State Security," and listed address of North Korea.[3] The result is marked with a "score" of 94%. The second OFAC Check document—produced on

[2] To the left of these words is a circular gauge icon with a needle pointing to the right-most of three quadrants and the space occupying the fourth quadrant reading "RFI." Other evidence suggests that RFI stands for "red flag indicator" and that the needle is pointing to an orange or red portion of the gauge. While these suggestions certainly seem plausible in context, the Court notes that it is unable to confirm this information with the black-and-white copies of the documents that the parties have submitted.

[3] The parties agree that Plaintiff was born in 1990 and resides in Los Angeles, California, United States. Doc. No. 85-1, ¶ 20.

Kang's return to the dealership—includes a second search result (in addition to an identical entry for Song Nam Kang) for a registered vessel identified as "KANG SONG 1" and linked to Korea Kumbyol Trading Company. This result is also marked with a score of 94%.

Kang filed this lawsuit on behalf of himself and a class of similarly situated consumers, pleading causes of action under the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq., and California's Consumer Credit Reporting Agencies Act ("CCRAA"), Cal. Civil Code § 1785.1 et seq. Doc. No. 1. Specifically, on behalf of a putative class, Kang alleged that Credit Bureau failed to follow reasonable procedures to assure the maximum possible accuracy of the consumer information included in its OFAC Check documents, in violation of 15 U.S.C. § 1681e(b) and Cal. Civil Code § 1785.14(b); and failed to disclose upon request all information in consumer files, in violation of 15 U.S.C. § 1681g(a) and Cal. Civil Code §§ 1785.10 and 1785.15. On behalf of only himself, Kang alleged that Credit Bureau failed to reinvestigate the disputed OFAC-related information that it had prepared and sold to the dealership, in violation of 15 U.S.C. § 1681i.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Credit Bureau moved to dismiss all five claims on the ground that it was not subject to these provisions of the FCRA and CCRAA because it was not acting as a credit reporting agency under the factual allegations of the complaint. Doc. No. 10. The Court denied this motion. Doc. No. 20. Credit Bureau now moves for summary judgment partly on the same ground. Doc. No. 81.

## LEGAL STANDARD

Summary judgment is proper where there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Fortyune v. Am. Multi- Cinema, Inc., 364 F.3d 1075, 1080 (9th Cir. 2004). The party moving for summary judgment bears the initial burden of informing the court of the basis for its motion and identifying the portions of any declarations, pleadings, and discovery that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984

(9th Cir. 2007). When the nonmoving party will have the burden of proof on an issue at trial, the movant may prevail by presenting evidence that negates an essential element of the nonmoving party's claim or by merely pointing out that there is an absence of evidence to support an essential element of the nonmoving party's claim. See James River Ins. Co. v. Herbert Schenk, P.C., 523 F.3d 915, 923 (9th Cir. 2008); Soremekun, 509 F.3d at 984. If the moving party meets its initial burden, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102–03 (9th Cir. 2000). If the nonmoving party fails to produce evidence sufficient to create a genuine issue of material fact, the moving party is entitled to summary judgment. Nissan Fire, 210 F.3d at 1103. On the other hand, if the nonmoving party produces sufficient evidence to create a genuine issue of material fact, the nonmoving party defeats the motion. Id.

## DISCUSSION

Credit Bureau contends that it is entitled to summary judgment because Kang's claims are based on FCRA and CCRAA provisions that do not apply under the factual circumstances of this case. Kang disputes this contention. A quick survey of the greater legal landscape in which Kang's claims arise serves as useful context for unpacking the parties' specific arguments.

### A. The OFAC

The Office of Foreign Assets Control of the U.S. Department of the Treasury administers and enforces economic and trade sanctions against threats to the national security, foreign policy, and economy of the United States. Cortez v. Trans Union, LLC, 617 F.3d 668, 696 (3d Cir. 2010). Amongst its enforcement efforts, OFAC publishes a list of individuals and companies owned or controlled by, or acting for or on behalf of, targeted countries, as well as individuals and entities that are not country-specific (e.g., terrorists and narcotics traffickers). Id. Collectively, these listed entities—which are referred to as "Specially Designated Nationals" or "SDNs"—populate what is known as the OFAC's Specially Designated Nationals and Blocked Persons List

("SDN List"). Id. The OFAC provides public access to the SDN List, which includes publication online where the SDN List can be reviewed and downloaded. See 31 C.F.R. ch. V, app. A (describing OFAC's online publication of the SDN List); *Specially Designated Nationals And Blocked Persons List (SDN) Human Readable Lists*, U.S. DEPARTMENT OF THE TREASURY, http://www.treasury.gov/sdn (last visited Mar. 4, 2021) (access to the SDN List). Under federal law, it is generally illegal for United States individuals and businesses to extend credit to or otherwise do business with any entity on the SDN List. Cortez, 617 F.3d at 696–97, 701.

**B. The FCRA and the CCRAA**

To regulate the credit reporting industry, Congress enacted the Fair Credit Reporting Act and California enacted the Consumer Credit Reporting Agencies Act. The purpose of both statutory acts is to protect consumers by ensuring that credit reporting agencies report fair and accurate credit information. See 15 U.S.C. § 1681; Cal. Civil Code § 1785.1(d). It is well-recognized that the CCRAA is analogous to the FCRA, and the Ninth Circuit "operate[s] under the assumption that California courts would interpret the FCRA and CCRAA consistently." Carvalho v. Equifax Info. Servs., LLC, 629 F.3d 876, 890 (9th Cir. 2010). Each act authorizes private rights of action for victims of violations of their respective provisions. See 15 U.S.C. §§ 1681n–1681p; Cal. Civil Code § 1785.31. On the basis of this authorization, Kang raises claims under the following statutes:

Two of the class claims are based on statutory requirements regarding credit reporting agencies' use of reasonable procedures to ensure credit reports are accurate. The FCRA provides that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). Similarly, the CCRAA provides that "[w]henever a consumer credit reporting agency prepares a consumer credit report, it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." Cal. Civil Code § 1785.14(b).

The other two class claims are based on statutory requirements regarding credit reporting

agencies' disclosure of information in consumer files. The FCRA states that "[e]very consumer reporting agency shall, upon request, . . . clearly and accurately disclose to the consumer: (1) All information in the consumer's file at the time of the request." 15 U.S.C. § 1681g(a)(1). Likewise, the CCRAA states that "[e]very consumer credit reporting agency shall, upon request and proper identification of any consumer, allow the consumer to visually inspect all files maintained regarding that consumer at the time of the request." Cal. Civil Code § 1785.10(a); see also Cal. Civil Code § 1785.15.

Finally, Kang's individual claim is based on an FCRA provision regarding credit reporting agencies' reinvestigation of disputed information in consumer files:

> if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

15 U.S.C. § 1681i(a)(1)(A).

**C. Credit Bureau's summary judgment motion**

Credit Bureau asserts that it is entitled to summary judgment on two grounds. First, Credit Bureau argues that it is not a "consumer reporting agency" under the FCRA or a "consumer credit reporting agency" under the CCRAA. Second, Credit Bureau argues that the OFAC Check documents are not "consumer reports" under the FCRA or "consumer credit reports" under the CCRAA. Under both arguments, Credit Bureau asserts that Kang's claims are defeated as a matter of law to the extent they require proof to the contrary. For his part, Kang agrees that these statutory definitions need to be satisfied for his claims to succeed,[4] but disputes Credit Bureau's

[4] Based on the applicable statutory text, all five of Kang's causes of action are in part dependent on proof that Credit Bureau operates (through its acts or omissions) as a "consumer [credit] reporting agency" under the factual circumstances of this case. See 15 U.S.C. §§ 1681e(b), 1681g(a)(1), 1681i(a); Cal. Civil Code §§ 1785.10(a), 1785.14(b), 1785.15. At least some of Kang's claims also turn on proof that the OFAC Check documents constitute "consumer [credit] reports." See § 1681e(b); § 1785.14(b).

theory that the evidence unequivocally demonstrates they are not met here. Instead, Kang contends that Credit Bureau has not carried its summary judgment burden to show that no genuine issue of material fact exists on these matters.

While the Court will consider Credit Bureau's arguments in turn, it also recognizes that the arguments overlap in so far as the statutory definitions at the heart of these disputes are themselves intwined: that is, a consumer reporting agency is an entity that prepares and furnishes consumer reports, and a consumer report is a communication by a consumer reporting agency. To navigate around this problem, the Court will note up front that Kang has presented sufficient evidence to establish that Credit Bureau is not entitled to summary judgment on either ground.

**1. Consumer reporting agency**

The FCRA defines a "consumer reporting agency" as follows:

> The term "consumer reporting agency" means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

15 U.S.C. § 1681a(f).

The CCRAA defines a "consumer credit reporting agency" as follows:

> "Consumer credit reporting agency" means any person who, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the business of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer credit reports to third parties, but does not include any governmental agency whose records are maintained primarily for traffic safety, law enforcement, or licensing purposes.

Cal. Civil Code § 1785.3(d).[5]

Credit Bureau argues that it meets neither definition. Instead, Credit Bureau contends that it is a "reseller"—a separately defined statutory term—and that this distinction defeats all of

[5] The Court recognizes that the separate statutory terms and their respective definitions are interchangeable for purposes of this motion and uses "consumer reporting agency" in place of both terms throughout this order.

Kang's claims. The Court is not convinced.[6]

To start, the CCRAA does not define the term "reseller," and Credit Bureau's citation to a CCRAA provision that exempts "a consumer credit reporting agency that acts only as a reseller of credit information" from application of statutes that are not in any way connected to Kang's claims is unavailing. See Cal. Civil Code § 1785.20.3(g). While the FCRA separately defines the term "reseller," it makes clear that resellers are still considered consumer reporting agencies under the act. See 15 U.S.C. § 1681a(u) ("The term 'reseller' means a consumer reporting agency that . . . ."); Poore v. Sterling Testing Sys., Inc., 410 F. Supp. 2d 557, 566 (E.D. Ky. 2006) (explaining that FCRA's definition of "reseller" under § 1681a(u) "specifically states that a reseller is, in fact, a 'consumer reporting agency'"). Credit Bureau has not identified a statutory basis for broadly exempting a reseller from FCRA obligations solely on account of its being a particular kind of consumer reporting agency. In opposition, Kang contends that only his individual claim under § 1681i would be potentially affected by a clear reseller distinction. See 15 U.S.C. § 1681i(f)(1) (providing general exemption of resellers from the statute's reinvestigation requirements); see also Poore, 410 F. Supp. 2d at 566–67 (stating, in reference to § 1681i(f)(1), that "[w]here Congress has chosen to limit a reseller's obligations under the Act, it has explicitly done so"). But even with this claim, the Court need not belabor the reseller inquiry at this stage given that Kang has presented ample evidence showing that Credit Bureau operates as a consumer reporting agency for purposes of the OFAC Check documents.[7]

---

[6] In support of its motion, Credit Bureau asks the Court to take judicial notice of the complaint (and answer) in this case, as well the complaint filed by Kang and counsel in Kang v. Experian Information Solutions, Inc., No. 8:18-cv-830-CJC-DFM (C.D. Cal.). Doc. No. 82-2. According to Credit Bureau, comparing the two pleadings shows that Kang and counsel can properly determine which entities are consumer reporting agencies and which are resellers, and that this comparison reveals that Kang and counsel are playing "fast and loose with the law and the facts." Kang contests Credit Bureau's accusation, explaining that the other action—which he voluntarily dismissed—was filed before he learned that Credit Bureau "was the source of the inaccurate OFAC report that prevented him from obtaining financing without a co-signer." Kang argues that the earlier pleading is not relevant to any issues at hand.

Although court filings are a proper subject of judicial notice, the Court will deny Credit Bureau's request because the filings for which it seeks to have notice taken are not relevant to resolving this summary judgment dispute. See Cox v. Mariposa County, 445 F. Supp. 3d 804, 808 n.2 (E.D. Cal. 2020); Bryan v. City of Carlsbad, 297 F. Supp. 3d 1107, 1115 (S.D. Cal. 2018).

[7] Credit Bureau misrepresents the focus of Kang's claims for purposes of its "reseller" argument. That is, throughout its briefing, Credit Bureau contends that it also operates as a reseller by furnishing without altering consumer reports created by other consumer reporting agencies such as Experian, TransUnion, and Equifax. Be that as it may, Kang has not alleged that Credit Bureau never operates as a reseller—rather, he has alleged only that Credit Bureau operates

Specifically, the evidence demonstrates that Credit Bureau engages in the practices of: (1) assembling a copy of the SDN List in a database housed on its own servers, F. Larsen 30(b)(6) Dep. at 33–35 (Doc. No. 85-11); (2) evaluating this data by using a proprietary and self-developed algorithm that searches the database to determine whether specific subjects are a match with the self-maintained copy of the SDN List, F. Larsen Dep. at 49–53 (Doc. No. 85-7); F. Larsen 30(b)(6) Dep. at 102–03, Ex. 6; (3) producing OFAC Check documents by placing the results of those searches into a self-created report template, D. Larsen Dep. at 42–45 (Doc. No. 85-4); F. Larsen 30(b)(6) Dep. at 55–56, 103, 110–16, Ex. 6; (4) furnishing these documents to third-parties (including automobile dealerships) as part of its "complete compliance suite," which costs customers an additional $0.75 per purchased credit check, D. Larsen Dep. at 11–12, 92–96, 100; F. Larsen Dep. at 29; Kang Dep. at 50, 55; and (5) otherwise using means and facilities of interstate commerce throughout this process, D. Larsen Dep. at 28–29, 60–62; F. Larsen Dep. at 29–30.[8] Collectively, this evidence shows that, for purposes of its OFAC Check documents, Credit Bureau meets the definition of a "consumer reporting agency" under 15 U.S.C. § 1681a, and a "consumer credit reporting agency" under Cal. Civil Code § 1785.3(d).

Credit Bureau states its objections to nearly all of this evidence, but offers little rebutting—much less refuting—evidentiary support for its positions. Rather, Credit Bureau rests its own evidentiary case primarily on the declaration of Dean Binder, who describes himself as a credit expert retained by defense counsel to provide "expert opinions in connection with the case." Binder Decl., ¶ 1 (Doc. No. 82-3). Binder represents that he has reviewed most, if not all, of the pleadings, orders, and discovery in this case, and attaches his curriculum vitae as an exhibit to his declaration. Id., ¶ 4, Ex. A. Kang has separately moved to strike Binder's declaration on grounds that the declaration contains opinions that are legal conclusions for which Binder is not qualified to make. Doc. No. 86. In the alternative, Kang requests an opportunity to depose Binder before

---

as a consumer reporting agency with regard to the OFAC Check documents. In other words, per Kang's allegations, when Credit Bureau creates OFAC Check documents for a paying customer, Credit Bureau is operating as a consumer reporting agency.

[8] Kang also notes that there is no dispute that Credit Bureau is a "person" as this term is defined by the FCRA and the CCRAA. 15 U.S.C. § 1681a(b); Cal. Civil Code § 1785.3(j).

the Court resolves Credit Bureau's motion. Id.[9]

The Court agrees that much of Binder's declaration consists of conclusory statements that go directly to legal issues at the heart of this summary judgment dispute.[10] "[A]n expert witness cannot give an opinion as to her *legal conclusion*, i.e., an opinion on an ultimate issue of law." Nationwide Transp. Fin. v. Cass Info. Sys., 523 F.3d 1051, 1059–60 (9th Cir. 2008) (quoting Hangarter v. Provident Life & Accident Ins. Co., 373 F.3d 998, 1016 (9th Cir. 2004)). But even if Binder's declaration stands in full and every one of his statements is treated as evidence from a qualified expert that Credit Bureau is not a consumer reporting agency for purposes of the OFAC Check documents, all the declaration does is further demonstrate that a genuine issue of material fact remains. In other words, Credit Bureau is not entitled to summary judgment on this ground. With that being the case, there is no need to strike Binder's declaration, regardless of its evidentiary problems, or order that Binder's deposition be taken for purposes of this dispute.

**2. Consumer reports**

The FCRA defines a "consumer report" in relevant part as follows:

> The term "consumer report" means any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for—
>
> (A) credit or insurance to be used primarily for personal, family, or

---

[9] Credit Bureau asserts that Kang's motion should be denied in its entirety because Kang did not provide notice of at least twenty-eight days as required under Eastern District of California Local Rule 230. Credit Bureau is incorrect. Local Rule 230(e) requires that counter-motions or other motions "related to the general subject matter of the original motion" be served and filed "on the date prescribed for the filing of opposition." Local Rule 230(e). Kang complied with this rule by filing his motion to strike on the same day that he timely filed his opposition to Credit Bureau's summary judgment motion.

[10] E.g., Binder Decl., ¶ 6 ("CBC is not nor has it ever been a Consumer Reporting Agency as defined by the Federal Law under the Fair Credit Reporting Act ('FRCA')."); ¶ 11 ("[Credit Bureau] is not nor has it ever been a Consumer Reporting Agency as defined by FRCA and/or the CCCRA. CBC has not at any time compiled, assembled, evaluated maintained, controlled, or updated any of the CRA's data that is provided from the CRA's in a consumer credit report."); ¶ 17 ("It is not legally required for CBC as a credit reseller, to adhere to the FCRA's and/or the CCCRA stated primary mission of maximum possible accuracy as they have no control of what information is being reported or how the data is being collected."); ¶ 19 ("As set forth above, under the FRCA and CCCRA, CBC is statutorily defined as a reseller and not a CRA."). Nearly all of these legal conclusions are further employed as the primary (and in many cases only) supporting evidence for Credit Bureau's statement of undisputed facts. See Doc. No. 82-1.

household purposes;

(B) employment purposes; or

(C) any other purpose authorized under section 1681b of this title.

15 U.S.C. § 1681a(d)(1).

The CCRAA defines a "consumer credit report" in relevant part as follows:

> "Consumer credit report" means any written, oral, or other communication of any information by a consumer credit reporting agency bearing on a consumer's credit worthiness, credit standing, or credit capacity, which is used or is expected to be used, or collected in whole or in part, for the purpose of serving as a factor in establishing the consumer's eligibility for: (1) credit to be used primarily for personal, family, or household purposes, or (2) employment purposes, or (3) hiring of a dwelling unit, as defined in subdivision (c) of Section 1940, or (4) other purposes authorized in Section 1785.11.

Cal. Civil Code § 1785.3(c).[11]

Other than quoting the FCRA provision in its reply brief, Credit Bureau entirely ignores these definitions. Rather, it makes a case that the OFAC Check documents are not consumer reports because they were not included in the Experian credit reports—which themselves did not include OFAC-related information and have been produced as evidence—that the dealership purchased from Credit Bureau. Doc. No. 82-4 at 7–12. Kang more or less agrees with Credit Bureau's factual point, but argues that this point is irrelevant because his claims are not based on the Experian credit reports.

The Court agrees with Kang. From his complaint through his motion briefing, Kang has made clear that his claims are based solely on the OFAC Check documents, which he argues are themselves consumer reports under the FCRA and the CCRAA. Sufficient evidence supports his argument too. Namely, evidence shows that Kang needed a co-signer to secure the loan because of the OFAC Check documents. In other words, evidence shows how Credit Bureau's communications had a bearing on both his credit worthiness and credit eligibility. As the Third Circuit has explained, "[i]t is difficult to imagine an inquiry more central to a consumer's 'eligibility' for credit than whether federal law prohibits extending credit to that consumer in the

[11] The Court recognizes that the separate statutory terms and their respective definitions are interchangeable for purposes of this motion and uses "consumer report" in place of both terms throughout this order.

first instance." Cortez, 617 F.3d at 707–08 (rejecting a near-identical argument regarding OFAC-related communications); see also Ramirez v. TransUnion LLC, 951 F.3d 1008, 1020 (9th Cir. 2020) (summarizing the analysis in *Cortez* and implicitly agreeing with the Third Circuit's "consumer report" conclusion throughout the opinion). While Credit Bureau stresses that the OFAC Check documents did not actually show that Kang was on the SDN List but rather that the "OFAC Hits" were false positives that the dealership cleared, these factual points—even if taken as indisputably true—do not somehow exclude the documents from the applicable statutory definitions. Nor, for that matter, do they resolve the genuine issue on this material fact that exists based on the evidence presented. In sum, the Court concludes that Credit Bureau is not entitled to summary judgment on this ground.

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Credit Bureau's motion for summary judgment (Doc. No. 81) is DENIED;
2. Kang's motion to strike (Doc No. 86) is DENIED as unnecessary.

IT IS SO ORDERED.

Dated: March 4, 2021

SENIOR DISTRICT JUDGE