UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUNG GON KANG,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CREDIT BUREAU CONNECTION, INC.,<br><br>　　　　　Defendant. | CASE NO. 1:18-cv-01359-AWI-SKO<br><br>ORDER ON PLAINTIFF'S MOTION FOR CLASS CERTIFICATION<br><br>(Doc. No. 111) |

Plaintiff Sung Gon Kang alleges that Defendant Credit Bureau Connection, Inc. ("Credit Bureau") caused him injury in its violation of several state and federal consumer credit reporting statutes. Kang now moves for class certification under Federal Rule of Civil Procedure 23(b)(3). Having reviewed and considered all the briefing and evidence submitted by the parties, the Court will GRANT in part Kang's motion.

## BACKGROUND

Credit Bureau sells credit reports that help automobile dealers manage the regulatory compliance obligations that accompany every consumer car purchase. One of the obligations derives from a Treasury Department Office of Foreign Assets Control ("OFAC") regulation that prohibits dealers from doing business with anyone designated as a "Specially Designated National" or "SDN" on OFAC's SDN list. Individuals on the SDN list consist of persons and companies owned or controlled by, or acting for or on behalf of, targeted countries, as well as persons and entities that are not country-specific, such as terrorists and drug traffickers. SDNs are prohibited from transacting business in the United States for national security reasons.

Credit Bureau's credit reports indicate whether a consumer is an "OFAC Hit," that is, someone with whom the automobile dealer might not want to do business with because of that

person's match to the SDN list. To determine whether a consumer is an OFAC Hit, Credit Bureau uses a "similar name" algorithm script that runs the consumer's name against a copy of the SDN list downloaded on Credit Bureau's servers. Despite the availability of additional pieces of information identifying the consumer, such as date of birth and address, Credit Bureau runs only first and last names when checking whether a consumer matches with anyone on the SDN list.

In 488 credit reports containing an OFAC Hit that Credit Bureau sold to a third party between October 2016 and September 2019, 8 reports had an exact match between the name of the consumer applying for credit and the SDN considered a matching "Hit." None of the reports had a match for name, date of birth, and address. Credit Bureau is unaware of a single case in which its "similar name" algorithm script generated an OFAC Hit that correctly matched a consumer with an SDN.

Kang was a consumer whose name inaccurately came up as an OFAC Hit on a credit report sold by Credit Bureau to Norm Reeves Honda. The OFAC check matched Kang with a North Korean SDN named Song Nam Kang. After Norm Reeves Honda denied Kang credit in front of his father and sister, Kang felt embarrassed, ashamed, and angry. He later requested and received a copy of the credit report, at which time he learned that Credit Bureau's OFAC check incorrectly matched him with an SDN.

Kang filed this lawsuit on behalf of himself and a class of similarly situated consumers, pleading causes of action under the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq., and California's Consumer Credit Reporting Agencies Act ("CCRAA"), Cal. Civil Code § 1785.1 et seq. Doc. No. 1. Specifically, on behalf of a putative class, Kang alleged that Credit Bureau failed to follow reasonable procedures to assure the maximum possible accuracy of the consumer information included in its OFAC Check documents, in violation of 15 U.S.C. § 1681e(b) and Cal. Civil Code § 1785.14(b); and failed to disclose upon request all information in consumer files, in violation of 15 U.S.C. § 1681g(a) and Cal. Civil Code §§ 1785.10 and 1785.15. On behalf of only himself, Kang alleged that Credit Bureau failed to reinvestigate the disputed OFAC-related information that it had prepared and sold to the dealership, in violation of 15 U.S.C. § 1681i.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Credit Bureau moved to dismiss all five claims on the ground that it was not subject to these provisions of the FCRA and CCRAA because it was not acting as a credit reporting agency under the factual allegations of the complaint. Doc. No. 10. The Court denied this motion. Doc. No. 20. Credit Bureau then moved for summary judgment, arguing that under the applicable statutes it was not acting as a consumer reporting agency and the OFAC check documents were not consumer reports. Doc. No. 81. Before that motion was taken under submission by the Court, Kang filed a motion for class certification. Doc. No. 84. The Court denied the latter motion, noting it could be re-noticed, if necessary, following the Court's resolution of Credit Bureau's summary judgment motion. Doc. No. 95. The Court later denied the summary judgment motion. Doc. No. 96. Thereafter, Kang has now re-noticed his class certification motion. Doc. No. 111.

## LEGAL STANDARD

A class action is a procedural mechanism that allows for representative litigation. Amchem Prods. v. Windsor, 521 U.S. 591, 613-19 (1997). This means that one or more class members may "litigate on behalf of many absent class members, and those class members are bound by the outcome of the representative's litigation." 1 William Rubenstein, Newberg on Class Actions § 1:1 (5th ed. 2012) (citing Supreme Tribe of Ben Hur v. Cauble, 255 U.S. 356, 363 (1921)). "The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" Comcast Corp. v. Behrend, 569 U.S. 27, 33 (2013) (quoting Califano v. Yamasaki, 442 U.S. 682, 700–01 (1979)).

Class actions are governed by Rule 23 of the Federal Rules of Civil Procedure, which imposes a two-step test for deciding whether a class may be certified. Under the first step, the court determines whether the moving party has established four perquisites:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a)(1)–(4). If the prerequisites of Rule 23(a) are met, the court considers whether the proposed class action meets at least one of the three provisions of Rule 23(b). Fed. R.

3

1  Civ. P. 23(b).  Relevant here, Rule 23(b) states that a class action may be maintained if "the court
2  finds that the questions of law or fact common to class members predominate over any questions
3  affecting only individual members, and that a class action is superior to other available methods
4  for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

5    A party moving to certify a class action bears the burden of affirmatively demonstrating
6  compliance with Rule 23.  Comcast, 569 U.S. at 33.  "The Rule 'does not set forth a mere pleading
7  standard,'" but instead demands the moving party establish through evidentiary proof that the
8  proposed class action satisfies the prerequisites of Rule 23(a) and one of the provisions of Rule
9  23(b).  Id. (quoting Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011)). Courts generally
10 require the moving party to demonstrate by a preponderance of the evidence that class certification
11 is appropriate. 3 Newberg on Class Actions § 7:21 (citing cases, including Martin v. Sysco Corp.,
12 325 F.R.D. 343, 354 (E.D. Cal. 2018) ("While Rule 23 does not specifically address the burden of
13 proof to be applied, courts routinely employ the preponderance of the evidence standard.")).

14   To ensure the moving party has "satisfied" its burden, the district court must conduct a
15 "rigorous analysis."  Comcast, 569 U.S. at 33.  Because the "class determination generally
16 involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's
17 cause of action," this rigorous analysis may include "prob[ing] behind the pleadings" and "overlap
18 with the merits of the plaintiff's underlying claim."  Id. at 33–34.  Yet, "'[n]either the possibility
19 that a plaintiff will be unable to prove his allegations, nor the possibility that the later course of the
20 suit might unforeseeably prove the original decision to certify the class wrong, is a basis for
21 declining to certify a class which apparently satisfies' Rule 23."  Sali v. Corona Reg'l Med. Ctr.,
22 909 F.3d 996, 1004–05 (9th Cir. 2018) (quoting Blackie v. Barrack, 524 F.2d 891, 901 (9th Cir.
23 1975)).  Ultimately, the decision to grant or deny a motion for class certification under Rule 23 is
24 committed to the broad discretion of the trial court.  Bateman v. Am. Multi–Cinema, Inc., 623
25 F.3d 708, 712 (9th Cir. 2010).

**DISCUSSION**

A.     **Class Definition**

Before turning to the requirements of Rule 23(a) and (b)(3), an issue regarding the proposed class definitions must be resolved. Fed. R. Civ. P. 23(c)(1)(B) ("An order that certifies a class action must define the class . . . ."). District courts have discretion to modify class definitions where necessary. Nevarez v. Forty Niners Football Co., 326 F.R.D. 562, 575 (N.D. Cal. 2018); Campbell v. PricewaterhouseCoopers, LLP, 253 F.R.D. 586, 594 (E.D. Cal. 2008).

Kang seeks certification of the following classes:

> All individuals about whom Defendant prepared a report that (1) included an OFAC "Hit;" (2) was published to a third party from October 2, 2013 to the date of judgment; and (3) included a U.S. address (including U.S. Territories) for that individual.

> All individuals about whom Defendant prepared a report that (1) included an OFAC "Hit;" (2) was published to a third party from October 2, 2011 to the date of judgment; and (3) included a U.S. address (including U.S. Territories) for that individual.

With one exception, these definitions describe classes that are ascertainable based on objective criteria. See Briseno v. ConAgra Foods, Inc., 844 F.3d 1121, 1124 n.3–4 (9th Cir. 2017) (describing ways in which courts have considered the implicit prerequisite of "ascertainability" within certification decisions under Rule 23). The lone problem rests with the class period's unspecified end date—"to the date of judgment"—which both "creates a moving target and presents potential case management problems." Taylor v. AutoZone, Inc., 2011 U.S. Dist. LEXIS 62712, *4 (D. Ariz. June 13, 2011); Hart v. Rick's N.Y. Cabaret Int'l, Inc., 967 F. Supp. 2d 901, 949 (S.D.N.Y. 2013) (explaining why an "open-ended end-date is untenable"). A specified end date, in contrast, promotes the "interests of clarity and finality" and "helps ensure that plaintiff-specific discovery will be completed in a timely manner." Taylor, 2011 U.S. Dist. LEXIS 62712, at *4-5. The Court will exercise its discretion to set a new class period end date as the date of this certification order. See id. (redefining unascertainable class period end date as date of conditional class certification order); Cruz v. Dollar Tree Stores, Inc., No. 07-cv-2050, 2009 U.S. Dist. LEXIS 62817, 2009 WL 1974404, at *2 (N.D. Cal. July 2, 2009) (redefining unascertainable class period end date as the date of certification order).

5

### B.     Numerosity

Pursuant to Rule 23(a)(1), a class action is maintainable only if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Credit Bureau does not contest that the proposed class satisfies this requirement. Kang presents evidence suggesting that at least 400 putative class members exist. Doc. No. 111-2 ("Sartell Decl."), ¶¶ 2–3; Doc. No. 111-22 ("Levin Decl."), ¶¶ 25–28. This satisfies the numerosity requirement of Rule 23(a)(1). See Californians for Disability Rights, Inc. v. Cal. Dep't of Transp., 249 F.R.D. 334, 347 (N.D. Cal. 2008) (stating that "precedent suggests that 20–40 class members is the 'grey area' for numerosity"); see also Gomez v. J. Jacobo Farm Labor Contractor, Inc., 334 F.R.D. 234, 251 (E.D. Cal. 2019) (explaining that an exact number of class members is not required for certification if it is reasonable to believe that joinder would be impracticable).

### C.     Commonality

Pursuant to Rule 23(a)(2), a class action is maintainable only if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To meet the commonality requirement, class claims must be based on a "common contention . . . capable of classwide resolution." Wal-Mart Stores, 564 U.S. at 350. This means that determination of the "truth or falsity" of that contention "will resolve an issue that is central to the validity of each one of the claims in one stroke." Id. Certification does not turn on "the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." Id. (quoted source omitted). In other words, not "every question of law or fact must be common to the class; all that Rule 23(a)(2) requires is 'a single significant question of law or fact.'" Abdullah v. U.S. Sec. Assocs., Inc., 731 F.3d 952, 957 (9th Cir.2013) (emphasis omitted) (quoting Mazza v. Am. Honda Motor Co., 666 F.3d 581, 589 (9th Cir. 2012)).

Here, the commonality requirement is satisfied. Kang identifies the common issues as (1) whether Credit Bureau disclosed consumer information included in its OFAC Check documents to third parties; (2) whether those disclosures contained inaccurate OFAC "Hits"; and (3) whether

6

Credit Bureau willfully failed to use reasonable procedures to assure the maximum possible accuracy of the OFAC information through its "similar name" matching script system. Credit Bureau does not address the commonality issue in opposition. Additionally, several courts in this Circuit have regarded the question of whether the defendant used reasonable procedures to assure maximum possible accuracy as satisfying the commonality prerequisite. See Patel v. Trans Union, LLC, 308 F.R.D. 292, 304 (N.D. Cal. 2015); Ramirez v. Trans Union, LLC, 301 F.R.D. 408, 418 (N.D. Cal. 2014);[1] Acosta v. Trans Union, LLC, 243 F.R.D. 377, 384 (C.D. Cal. 2007). Accordingly, the commonality requirement is met here.

### D. Typicality

Pursuant to Rule 23(a)(3), a class action may be maintained only if the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "[T]ypicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class so that the court may properly attribute a collective nature to the challenged conduct." 1 Newberg on Class Actions § 3:29. The test for typicality is (1) "whether other members have the same or similar injury," (2) "whether the action is based on conduct which is not unique to the named plaintiffs," and (3) "whether other class members have been injured by the same conduct." Wolin v. Jaguar Land Rover N. Am., LLC, 617 F.3d 1168, 1175 (9th Cir. 2010) (citations omitted).

Here, Kang's claims are typical of those of the class. Following the Supreme Court's holding in *TransUnion LLC v. Ramirez*, Kang and the putative class members incurred the "same or similar injury" in that they suffered "concrete reputational harm" from the "same conduct" of Credit Bureau. See TransUnion LLC v. Ramirez, 141 S. Ct. 2190, 2200 (2021) (finding that 1,853

---

[1] The Court recognizes that *Ramirez v. Trans Union, LLC*, 301 F.R.D. 408 (N.D. Cal. 2014) was reviewed on appeal by the Ninth Circuit in *Ramirez v. TransUnion LLC*, 951 F.3d 1008 (9th Cir. 2020), and then again by the Supreme Court in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021). The Supreme Court reversed as to standing only and for a portion of the class who had no proof that the defendant published their credit information inaccurately to a third party. The Supreme Court affirmed the holdings of the lower courts that the portion of the class whose credit information was inaccurately published to a third party had standing because they suffered a common concrete injury. Accordingly, when citing the "*Ramirez* Cases" from the lower court levels, the Court only cites those portions of the case that were not directly reversed by the Supreme Court.

7

class members demonstrated "concrete reputational harm" where the defendant failed to use reasonable procedures to ensure the accuracy of the class members' OFAC information). Specifically, like the *TransUnion* defendant, Credit Bureau prepared a report about Kang and each class member that included an inaccurate OFAC "Hit" generated by its "similar name" matching script and published that OFAC information to its customers.

Credit Bureau contends that Kang's claims are not typical because Kang's experience with Credit Bureau's OFAC Check is "entirely different than the class he seeks to represent" and the injuries of Kang and the class are "worlds apart." Doc. No. 116 at 11-12. While Kang may have had a somewhat unique experience with Credit Bureau when the disclosure of his OFAC check results in front of his father and sister during his purchase caused him to feel "angry" and "embarrassed," that experience is not the basis for Kang's claim; rather, the basis comes from the willfulness of Credit Bureau's conduct. Ramirez, 301 F.R.D. at 420. Even if Kang's injuries were slightly more severe than some class members' injuries, Kang's injuries still arose "from the same event or practice or course of conduct that [gave] rise to the claims of other class members and [his claims were] based on the same legal theory." Ramirez v. TransUnion LLC, 951 F.3d 1008, 1033 (9th Cir. 2020) (citing Lacy v. Cook Cty., Ill., 897 F.3d 847, 866 (7th Cir. 2018)); see also Parsons v. Ryan, 754 F.3d 657, 685 (9th Cir. 2014) ("We do not insist that the named plaintiffs' injuries be identical with those of the other class members, only that the unnamed class members have injuries similar to those of the named plaintiffs and that the injuries result from the same, injurious course of conduct."). Thus, Kang's injuries were not so unique, unusual, or severe to make him an inapt representative of the classes. Ramirez, 951 F.3d at 1033.

### E.     Adequacy of Representation

Pursuant to Rule 23(a)(4), a class action is maintainable only if the "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The term "parties" refers to both the class representative and class counsel. In re Conseco Life Ins. Co. LifeTrend Ins. Sales & Mktg. Litig., 270 F.R.D. 521, 531 (N.D. Cal. 2010). The Ninth Circuit tests the adequacy as follows: "(1) do the named plaintiffs and their counsel have any conflicts of

interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" Ellis v. Costco Wholesale Corp., 657 F.3d 970, 985 (9th Cir. 2011) (quoted source omitted). "Adequate representation depends on, among other factors, an absence of antagonism between representatives and absentees, and a sharing of interest between representatives and absentees." Id.

The Court finds that Kang is an adequate class representative, a matter that Credit Bureau does not contest. First, Kang is not conflicted, as he and the rest of the putative class have a mutual interest in recovering from Credit Bureau (and not any supervisors or other employees) uniform statutory damages under the FCRA and CCRAA. Second, Kang has shown himself to be qualified to serve as class representative by retaining counsel, conferring with his attorneys regarding the matter, and participating in discovery. Doc. No. 111-18.

Credit Bureau also does not challenge the adequacy of proposed class counsel, Caddell & Chapman, and Francis Mailman Soumilas, P.C. Michael Caddell, of the former firm, declares that he and his law firm have significant experience litigating complex claims and numerous class action lawsuits. Doc. No. 111-21. Kang has also presented a firm biography of Francis Mailman Soumilas, P.C. that reflects similar credentials. Doc. No. 111-20. Having considered the factors under Rule 23(g), the Court finds that proposed class counsel is adequate because counsel: (1) have sufficiently identified and investigated potential claims in this lawsuit; (2) have sufficient experience litigating FCRA and other class actions; (3) appear to have sufficient knowledge of the applicable FCRA and CCRAA laws; and (4) appear to be willing and able to commit sufficient resources to representing the proposed class. Fed. R. Civ. P. 23(g)(1)(A).

**F.     Predominance**

Rule 23(b)(3) requires a showing that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). This requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623 (1997). The predominance inquiry logically involves two steps: "a court must first characterize the issues in

9

the case as common or individual and then weigh which predominate." 2 Newberg on Class Actions § 4:50. An individual issue is one where the "members of a proposed class will need to present evidence that varies from member to member." Tyson Foods, Inc. v. Bouaphakeo, 136 S. Ct. 1036, 1045 (2016) (citing 2 Newberg on Class Actions § 4:50). Whereas a common issue is one where "the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." Id.

In general, common issues will not predominate if "'a great deal of individualized proof' would need to be introduced or 'a number of individualized legal points' would need to be established after common questions were resolved," nor would they predominate if the resolution of an "'overarching common issue breaks down into an unmanageable variety of individual legal and factual issues.'" 2 Newberg on Class Actions § 4:50 (quoting Klay v. Humana, Inc., 382 F.3d 1241, 1255 (11th Cir. 2004), and Cooper v. S. Co., 390 F.3d 695, 722 (11th Cir. 2004)). On the other hand, common questions likely will predominate if "individual factual determinations can be accomplished using computer records, clerical assistance, and objective criteria—thus rendering unnecessary an evidentiary hearing on each claim," or if "adding more plaintiffs to the class would minimally or not at all affect the amount of evidence to be introduced." Id. (quoting Smilow v. Sw. Bell Mobile Sys., Inc., 323 F.3d 32, 40 (1st Cir. 2003), and Klay, 382 F.3d at 1255).

Here, the Court finds that common questions predominate on Kang's FRCA claims, but not on a subgroup of Kang's CCRAA claims. The primary common question is whether Credit Bureau's "similar name' matching script system was a reasonable procedure to assure maximum possible accuracy of the OFAC information it prepared for its customers. See Patel, 308 F.R.D. at 308 (finding that a predominant common issue was whether there were "reasonable procedures in place (here, the name-only logic) to ensure the maximum possible accuracy of the information"); Ramirez, 301 F.R.D. at 422 (The overriding common question on this claim is whether [Defendant's] name-only matching logic is a reasonable procedure to assure maximum possible accuracy).

Credit Bureau contends that predominance is not met on two grounds: First, Credit Bureau asserts that individualized inquiries into the extent of each class member's "actual damages"

10

predominate over common questions. Second, Credit Bureau contends that the "timeliness" of each class member's claims presents predominant individualized inquiries. The next two subsections address both subjects in turn.

### 1. Damages

A defendant who willfully violates the FCRA owes the consumer actual damages sustained by the consumer or statutory damages of not less than $100 and not more than $1,000. 15 U.S.C. § 1681n(a)(1). Kang claims that "[n]o individualized damages issues exist because Plaintiff is seeking statutory damages for each member of the class, not actual damages[.]" Doc. No. 111-1 at 15. Credit Bureau contends that, despite Kang's demand for statutory damages, the Court must nevertheless consider the members' individualized actual damages when assessing statutory damages because "the FCRA does not specify the factors a jury should consider in awarding statutory damages" and "[u]sing actual damage to determine statutory damages grounds the award in objective, concrete evidence and limits the risk that the award will be found unreasonable or excessive." Doc. No. 116 at 15–16. The Court declines to accept Credit Bureau's interpretation of 15 U.S.C. § 1681n(a)(1).

The plain language of § 1681n(a)(1)(A) provides that a qualifying consumer is entitled to actual damages "*or*" statutory damages, and the Ninth Circuit has interpreted this disjunction to mean that the consumer may recover statutory damages without demonstrating actual harm. Bateman v. Am. Multi-Cinema, Inc., 623 F.3d 708, 718-19 (9th Cir. 2010) (citing Murray v. GMAC Mortg. Corp., 434 F.3d 948, 953 (7th Cir. 2006) (under the FCRA "individual losses, if any, are likely to be small—a modest concern about privacy, a slight chance that information would leak out and lead to identity theft. That actual loss is small and hard to quantify is why statutes such as the Fair Credit Reporting Act provide for modest damages without proof of injury")). Because the actual harm that a willful FCRA violation will inflict on a consumer is often small or difficult to prove, Congress set a range of statutory damages that "*is* proportionate and appropriately compensates the consumer" irrespective of actual harm. Bateman, 623 F.3d at 719 (emphasis in original). Although there is no principled basis for determining when an award closer

to the $100 mark or $1,000 mark is more proportionate, id., the Ninth Circuit noted that an award "near the high end of the range" is clearly justified when the defendant willfully violates the FCRA, like Credit Bureau is alleged to have done here, by recklessly labeling hundreds of consumers as sanctioned individuals without taking basic steps to verify the accuracy of these labels. Ramirez, 951 F.3d at 1035.

Moreover, within the Ninth Circuit, the issue of determining the award amount within the statutory range generally has not been predominant enough to negate certification of FRCA section 1681e(b) class actions. See Patel, 308 F.R.D. at 307-10 (certifying class action that sought statutory damages for defendant's willful violation of section 1681e(b)); Ramirez, 301 F.R.D. at 423 (the question of what statutory damage (between $100 and $1000) to award each class member did not require an individualized inquiry that predominated); Acosta v. Trans Union, LLC, 240 F.R.D. 564, 571 (C.D. Cal. 2007) (noting that any legally relevant distinction among the class members' claims regarding the damages each suffered "is immaterial here where the FCRA awards statutory damages"). Credit Bureau cites one exception from the District of Arizona, which denied class certification in part because there could be wide variation in award amount within the statutory regime based on each class member's actual harm.[2] Mix v. Asurion Ins. Servs., 2016 U.S. Dist. LEXIS 172874, *42 (D. Ariz. Dec. 14, 2016). However, the *Mix* court did not address or distinguish the Ninth Circuit's apparently contrary holding in *Bateman* that the statutory damages range "*is* proportionate and appropriately compensates the consumer" irrespective of actual harm. Bateman, 623 F.3d at 719. Additionally, the *Mix* court primarily relied on *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990) as authority to reach its conclusion.  However, the Ninth Circuit later distinguished *Six (6) Mexican Workers* on the grounds that it involved Act-specific analysis under the Farm Labor Contractor Registration Act.

---

[2] Credit Bureau also cites Campbell v. Facebook Inc., 315 F.R.D. 250, 267-69 (N.D. Cal. 2016) for the proposition that the Northern District of California denied certification of a FCRA class under Rule 23(b)(3) on "similar grounds." However, Campbell is distinguishable because it concerned inquiries into statutory damage awards under the Electronic Communications Privacy Act ("ECPA") in which courts consider a set of factors, such as (1) the severity of the violation, (2) whether or not there was actual damage to the plaintiff, (3) the extent of any intrusion into the plaintiff's privacy, (4) the relative financial burdens of the parties, (5) whether there was a reasonable purpose for the violation, and (6) whether there is any useful purpose to be served by imposing the statutory damages amount.

Ramirez, 951 F.3d at 1034-35. Accordingly, the Court concludes that this case does not present individualized damages issues that are so severe that they destroy class certification with respect to Kang's FCRA claims.[3]

Nevertheless, with respect to Kang's CCRAA claims, the predominance analysis is different. The CCRAA, unlike the FCRA, requires a showing of actual harm where, as here, the plaintiff is seeking statutory punitive damages under section 1785.31(a)(2)(B). See Trujillo v. First American Registry, Inc., 157 Cal. App. 4th 628, 637-38 (2008). Thus, to the extent Kang is seeking class certification of his state law claims for statutory punitive damages, individual issues will predominate. Ramirez, 301 F.R.D. at 425.

Kang, however, also seeks certification of his CCRAA reasonable procedures claim for injunctive relief pursuant to Rule 23(b)(2). Certification under that provision is appropriate if Rule 23(a) is satisfied (as it is here) and "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). There is no requirement that common questions predominate as with Rule 23(b)(3). Further, that the state monetary claims will not be certified pursuant to Rule 23(b)(3) does not mean that the claim for injunctive relief cannot be certified under Rule 23(b)(2). See Ramirez, 301 F.R.D. at 425; Ries v. Arizona Beverages USA LLC, 287 F.R.D. 523, 542 (N.D. Cal. 2012) (denying certification of monetary claims under Rule 23(b)(3) and granting certification of declaratory and injunctive relief claims under Rule 23(b)(2)).

2. Timeliness

The FCRA requires a consumer to file suit "no later than the earlier of (1) two years after the date of discovery by the consumer of the violation, or (2) five years after the date on which the violation occurs. 15 U.S.C. § 1681p. The CCRAA requires a consumer to file suit within two years of the date the consumer knew, or should have known, of the violation, or seven years from the earliest date on which liability could have arisen. Cal. Civ. Code § 1785.33.

---

[3] Even if this case presents some individualized damages issues within the statutory range, the need for individual damages calculations alone will not defeat class certification. *Ramirez*, 951 F.3d at 1033 n.14 (citing Vaquero v. Ashley Furniture Indus., Inc., 824 F.3d 1150, 1155 (9th Cir. 2016)).

1    Kang seeks to certify a class under the FCRA dating back five years from the time he filed
2 his Complaint and a class under the CCRAA dating back seven years from the time he filed his
3 Complaint. Credit Bureau contends that class certification should be denied because the issue of
4 whether a class member's claims fall within the longer of the two statute of limitations periods
5 presents individual questions that predominate over common questions. Doc. No. 116 at 20. In
6 response, Kang argues that the existence of a statute of limitations issue does not compel a finding
7 that individual issues predominate over common ones. Doc. No. 117 at 16.

8    "The Ninth Circuit has repeatedly held that '[t]he existence of a statute of limitations issue
9 does not compel a finding that individual issues predominate over common ones.'" Nitsch v.
10 Dreamworks Animation SKG Inc., 315 F.R.D. 270, 308 (N.D. Cal. 2016) (citing Williams v.
11 Sinclair, 529 F.2d 1383, 1388 (9th Cir. 1975) and Cameron v. E.M. Adams & Co., 547 F.2d 473,
12 478 (9th Cir. 1976)). "[B]ut individual questions of compliance with the relevant statute of
13 limitations nonetheless weigh against certification in terms of predominance." Wilson v. Metals
14 USA, Inc., 2016 U.S. Dist. LEXIS 86861, *37 (E.D. Cal. July 1, 2016). When weighing
15 predominance, the Court undertakes a pragmatic inquiry into the types of proof the parties will use
16 to prove or disprove the elements of their claims. Nitsch, 315 F.R.D. at 310; Romero v. Producers
17 Dairy Foods, Inc., 235 F.R.D. 474, 489 (E.D. Cal. 2006). "Merits questions may be considered to
18 the extent—but only to the extent—that they are relevant to determining whether the Rule 23
19 prerequisites for class certification are satisfied." Stromberg v. Qualcomm Inc., 14 F.4th 1059,
20 1075 (9th Cir. 2021).

21    Here, a pragmatic assessment demonstrates that the statute of limitations issue will not
22 present individual questions that predominate over common questions. "Credit reports are
23 generally prepared and published to third parties without a consumer being made aware of them,
24 signifying that the vast majority of violations would fall subject to the longer of [the two statute of
25 limitations periods]." Acosta, 243 F.R.D. at 387. Credit Bureau has not presented evidence
26 indicating otherwise.

27    Credit Burea relies heavily on *Holman v. Experian Info. Sols., Inc.*, 2012 U.S. Dist. LEXIS
28 59401 (N.D. Cal. Apr. 27, 2012). In *Holman*, the court found that individual issues predominated

14

because in order for the defendant to assess its liability to the putative class members whose credit reports were disclosed more than two years before the class action's trigger date, the defendant would have to determine whether each class member had accessed their credit report or otherwise learned of the defendant's disclosure. Holman, 2012 U.S. Dist. LEXIS 59401, at *42-43. However, *Holman* is distinguishable because, unlike Credit Bureau, the *Holman* defendant submitted evidence that "a substantial proportion of the class members may have been put on notice by [the defendant's customer] of the [the defendant's] violation." Id. at 42. Here, aside from the experience Norm Reeves Honda had with Kang, Credit Bureau presented no evidence that its other customers notified, or may have notified, putative class members of their OFAC check results. Neither did Credit Bureau submit evidence suggesting that the class members were notified, or may have been notified, through other means.

Furthermore, to the extent *Holman* suggests that a tolling analysis always defeats class certification, it conflicts with the Ninth Circuit's holdings in *Williams* and *Cameron*, which permitted class action claims to proceed despite the existence of such individualized inquiries. See Williams, 529 F.2d at 1388 (holding that the statute of limitations issue of whether each class member discovered, or in the exercise of reasonable diligence should have discovered, the violation was not a predominant individual issue); Cameron, 547 F.2d at 478 (same); see also Siqueiros v. GM LLC, 2021 U.S. Dist. LEXIS 98944, *68 (N.D. Cal. May 25, 2021) (applying holdings of Williams and Cameron that the existence of a statute of limitations issue does not compel a finding that individual issues predominate over common ones); Nitsch v. Dreamworks Animation SKG Inc., 315 F.R.D. 270, 308-09 (N.D. Cal. 2016) (same); Daniel v. Ford Motor Co., 2016 U.S. Dist. LEXIS 130745, *12-14 (E.D. Cal. Sep. 23, 2016) (same). *Holman* does not address or distinguish *Williams* or *Cameron* in its analysis.

In sum, although Kang's proposed classes do raise some individualized statute of limitations questions, they are not predominant over the primary common question of whether Credit Bureau's "similar name" matching script system was a reasonable procedure to assure maximum possible accuracy of the OFAC information it prepared for its customers.

### 3. Conclusion on Predominance

The Court finds that individualized damages issues do not predominate over Kang's FCRA claim for statutory damages or CCRAA claim for injunctive relief, but they do predominate over Kang's CCRAA claim for statutory punitive damages. Additionally, the Court finds insufficient evidence in the record to conclude that individualized statute of limitations questions predominate over common questions regarding the reasonableness of Credit Bureau's procedures.

**G.    Superiority**

Certification under Rule 23(b)(3) also requires a finding that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). To evaluate superiority, the court shall consider four "pertinent" factors: (1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(A)–(D). "A consideration of these factors requires the court to focus on the efficiency and economy elements of the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis." Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1190 (9th Cir. 2001) (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1780, at 562 (2d ed. 1986)). "A class action is the superior method for managing litigation if no realistic alternative exists." Valentino v. Carter–Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996). In contrast, "[i]f each class member has to litigate numerous and substantial separate issues to establish his or her right to recover individually a class action is not superior." Zinser, 253 F.3d at 1192.

Kang argues that class treatment is clearly superior, and Credit Bureau does not directly address the issue in opposition.[4] The Court finds the Rule 23(b)(3) factors weigh in favor of

---

[4] The Court notes that Credit Bureau's arguments against Kang's satisfaction of typicality, commonality, and predominance factors all inherently play a role in the Superiority analysis as well.

16

1 certification. There is no indication that putative class members have any interest in individually
2 controlling the prosecution of separate actions. Nor is there indication of other actions raising the
3 same issues based on the same facts or indication that there is another forum where an action of
4 this kind could be raised. While managing a class is by nature more difficult than managing the
5 claims of a single plaintiff, there is no suggestion here that the proposed class would be
6 unmanageable. To the contrary, these claims seem particularly apt for class adjudication through
7 use of records and data in Credit Bureau's possession. Patel, 308 F.R.D. at 310; Ramirez, 301
8 F.R.D. at 423-24.

      **H.**    **Conclusion**

In light of the above, the Court is satisfied that Kang has demonstrated that class certification is appropriate. As discussed above, however, the classes to be certified will be modified to reflect that the class period ends as of the date of this order and that statutory punitive damages under the CCRA will not be permitted through the class process.

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Kang's motion for class certification (Doc. No. 111) is GRANTED in part as follows:

   a. For Kang's FCRA claims for statutory damages, the Court certifies a class defined as "All individuals about whom Defendant prepared a report that (1) included an OFAC "Hit;" (2) was published to a third party from October 2, 2013 to March 4, 2022 and (3) included a U.S. address (including U.S. Territories) for that individual."

   b. For Kang's CCRAA claims for injunctive relief, the Court certifies a class defined as "All individuals about whom Defendant prepared a report that (1) included an OFAC "Hit;" (2) was published to a third party from October 2, 2011 to March 4, 2022; and (3) included a U.S. address (including U.S. Territories) for that individual."; and

2. The Court appoints Plaintiff Sung Gon Kang as class representative, and appoints Plaintiff's counsel, Caddell & Chapman, and Francis Mailman Soumilas, P.C., to serve as co-class counsel.

IT IS SO ORDERED.

Dated: March 4, 2022

_____
SENIOR DISTRICT JUDGE