1
2
3                        UNITED STATES DISTRICT COURT
4                   FOR THE EASTERN DISTRICT OF CALIFORNIA
5
6    SUN GONG KANG, individually and on          No.  1:18-cv-01359-SKO
     behalf of others similarly situated,
7                                                **ORDER VACATING HEARING AND
                       Plaintiff,                GRANTING UNOPPOSED MOTION FOR
8                                                PRELIMINARY APPROVAL OF CLASS
            v.                                   ACTION SETTLEMENT**
9
     CREDIT BUREAU CONNECTION, INC.,             (Doc. 148)
10
                       Defendant.
11
12

13         This matter is before the court on Plaintiff Sung Gon Kang ("Kang")'s unopposed motion

14   for preliminary approval of a class action settlement filed on May 1, 2023.  (Doc. 148.)  The matter

15   is unopposed (*see* Docket) and shall be submitted on the papers.  *See* E.D. Cal. Local Rule 230(g).

16   Accordingly, the hearing on the motion set for June 7, 2023, will be vacated.

17         For the reasons explained below, the Court grants preliminary approval of the proposed

18   class action settlement.[1]

19                              **I.      BACKGROUND**

20   **A.     Factual Background**

21         Defendant Credit Bureau Connection, Inc. ("Credit Bureau") sells credit reports that help

22   automobile dealers manage the regulatory compliance obligations that accompany every consumer

23   car purchase.  (*See* Doc. 1 at 5; Doc. 121 at 1.)  One of the obligations derives from a Treasury

24   Department Office of Foreign Assets Control ("OFAC") regulation that prohibits dealers from

25   doing business with anyone designated as a "Specially Designated National" or "SDN" on OFAC's

26   SDN list.  (*See* Doc. 1 at 2–3; Doc. 121 at 1.)  Individuals on the SDN list consist of persons and

27   companies owned or controlled by, or acting for or on behalf of, targeted countries, as well as

28   ───────────────────────
     [1] On February 28, 2023, the parties consented to the jurisdiction of the U.S. Magistrate Judge.  (*See* Docs. 141–143.)

persons and entities that are not country-specific, such as terrorists and drug traffickers.  (*See id*.)  SDNs are prohibited from transacting business in the United States for national security reasons.  *See* Doc. 1 at 3; Doc. 121 at 1.)

Credit Bureau's credit reports indicate whether a consumer is an "OFAC Hit," that is, someone with whom the automobile dealer might not want to do business with because of that person's match to the SDN list.  (Doc. 1 at 5; Doc. 121 at 1–2.)  To determine whether a consumer is an OFAC Hit, Credit Bureau uses a "similar name" algorithm script that runs the consumer's name against a copy of the SDN list downloaded on Credit Bureau's servers.  (Doc. 1 at 7; Doc. 121 at 2; Doc. 149 at 8.)  Despite the availability of additional pieces of information identifying the consumer, such as date of birth and address, Credit Bureau runs only first and last names when checking whether a consumer matches with anyone on the SDN list.  (*See* Doc. 121 at 2.)

Kang was a consumer whose name inaccurately came up as an OFAC Hit on a credit report sold by Credit Bureau to Norm Reeves Honda.  (*See* Doc. 1 at 8–12; Doc. 121 at 2; Doc. 149 at 8.)  The OFAC check matched Kang with a North Korean SDN named Song Nam Kang.  (*See id*.)  After Norm Reeves Honda denied Kang credit in front of his father and sister, Kang felt embarrassed, ashamed, and angry.  (*See id*.)  He later requested and received a copy of the credit report, at which time he learned that Credit Bureau's OFAC check incorrectly matched him with an SDN.  (*See id*.)

**B.    Procedural Background**

Kang filed this lawsuit on behalf of himself and a class of similarly situated consumers, pleading causes of action under the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*., and California's Consumer Credit Reporting Agencies Act ("CCRAA"), Cal. Civil Code § 1785.1 *et seq*.  (Doc. 1.)  Specifically, on behalf of a putative class, Kang alleged that Credit Bureau failed to follow reasonable procedures to assure the maximum possible accuracy of the consumer information included in its OFAC Check documents, in violation of 15 U.S.C. § 1681e(b) and Cal. Civil Code § 1785.14(b); and failed to disclose upon request all information in consumer files, in violation of 15 U.S.C. § 1681g(a) and Cal. Civil Code §§ 1785.10 and 1785.15.  On behalf of only himself, Kang alleged that Credit Bureau failed to reinvestigate the disputed OFAC-related

information that it had prepared and sold to the dealership, in violation of 15 U.S.C. § 1681i.  (*See id*.)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Credit Bureau moved to dismiss all five claims on the ground that it was not subject to these provisions of the FCRA and CCRAA because it was not acting as a credit reporting agency under the factual allegations of the complaint.  (Doc. 10.)  After the Court denied the motion (Doc. 20), the parties were embroiled in several discovery disputes pertaining to document and deposition requests Kang propounded to Credit Bureau.  (*See* Docs. 27, 44, 51, 63, 70, 71.)

Once the discovery disputes had been resolved, Credit Bureau moved for summary judgment, contending that under the applicable statutes it was not acting as a consumer reporting agency and the OFAC check documents were not consumer reports.  (Doc. 81.)  Before that motion was taken under submission by the Court, Kang filed a motion for class certification.  (Doc. 84.)  The Court denied the class certification motion, noting it could be re-noticed, if necessary, following the Court's resolution of Credit Bureau's summary judgment motion.  (Doc. No. 95.)  The Court later denied the summary judgment motion.  (Doc. 96.)  Thereafter, Kang re-noticed his class certification motion.  (Doc. 111.)

After class certification briefing was complete, but before the Court issued its ruling, the parties attended an all-day mediation session with Judge William Cahill (ret.), a JAMS neutral and mediator, via videoconference on September 21, 2021.  (*See* Doc. 149 at 13.)  "Notwithstanding the parties' good faith efforts and many hours of preparation, including the drafting of detailed mediation memoranda," the matter did not settle.  (*See id*.)

On March 4, 2022, the Court granted Kang's class certification motion in part, and certified the following classes:

> For Kang's FCRA claims for statutory damages, the Court certifies a class defined as "All individuals about whom [Credit Bureau] prepared a report that (1) included an OFAC "Hit;" (2) was published to a third party from October 2, 2013 to March 4, 2022 and (3) included a U.S. address (including U.S. Territories) for that individual" (the "FCRA Class").
>
> For Kang's CCRAA claims for injunctive relief, the Court certifies a class defined as "All individuals about whom [Credit Bureau] prepared a report that (1) included

an OFAC "Hit;" (2) was published to a third party from October 2, 2011 to March 4, 2022; and (3) included a U.S. address (including U.S. Territories) for that individual" (the "CCRAA Class").[2]

(Doc. 121 at 17.)  The Court also appointed Kang as Class Representative, and appointed Kang's counsel, Caddell & Chapman, and Francis Mailman Soumilas, P.C., to serve as co-Class Counsel. (*See id.*)

Class Counsel selected Continental Datalogix ("CDLx"), a notice administrator, to prepare a notice website and to send notice to the approximately 1,071 members of the FCRA Class.  (*See* Doc. 149 at 14.)  Notice was sent in September 2022, and no member of the FCRA Class opted out. (*See id.*)

In February 2023, the parties engaged the services of Rodney A. Max of Upchurch Watson White and Max Mediation Group.  (*See* Doc. 149 at 15.)  After two formal mediation sessions with Mr. Max, the parties agreed in principle to settle the action, and over the next few months continued to negotiate the terms of a settlement agreement, ultimately executing a "Class Action Settlement Agreement and Release" (the "Settlement Agreement").  (*See* Doc. 149 at 15.  *See also* Doc. 149-1.)

On May 1, 2023, Kang filed the pending unopposed motion for preliminary approval of the class action settlement.  (Doc. 148.  *See* Doc. 151 (Credit Bureau's statement of non-opposition).)

## II.      THE PROPOSED SETTLEMENT

### A.      The Class

For settlement purposes, the parties request approval of an estimated 1,119 individuals (the "Settlement Class" or "Settlement Class Members"), all of whom are members of the CCRAA Class, and 1,071 of whom are members of the FCRA Class.  (Doc. 149 at 15, 23; Doc. 149-1 at 4.)

### B.      The Settlement Period

For settlement purposes, the parties have defined the class period as the period "from October 2, 2013 to March 4, 2022" for the FRCA Class and the period "from October 2, 2011 to March 4, 2022" for the CCRAA Class.[3]  (*See* Doc. 149 at 13, 15.)

---

[2] The Court declined to certify Kang's CCRAA claims for statutory punitive damages.  (*See* Doc. 121 at 16.)

[3] The distinction between the two classes arises from the CCRAA's 7-year statute of limitations, Cal. Civ. Code §

4

**C.** **The Release of Claims**

The Settlement Agreement defines the Released Parties as "[Credit Bureau] and its respective predecessors, successors, parents, subsidiaries, and affiliates; its past, present, and future officers, directors, employees, agents, and personal representatives; and its past, present, and future principals, trustees, partners, members, owners, shareholders, and unitholders." (Doc. 149-1 at 6.) The Released Claims are defined as "any and all claims, actions, and causes of action, including claims for attorneys' fees, asserted or which could have been asserted as of the Effective Date[4], that arise out of or relate to the Class Claims." (*Id.* at 10.)  "Class Claims" means "means the claims asserted under the FCRA and CCRAA in Counts III and IV of the class action complaint in the Litigation (ECF 1), arising out of the allegations set forth therein." (*Id.* at 4.)

The Settlement Agreement further provides that, upon the Effective Date, Kang "releases and forever discharges the Released Parties from any and all claims, actions, and causes of action, including claims for attorneys' fees, asserted or which could have been asserted as of the Effective Date, or which now exist or might arise out of any duties or obligations owed by [Credit Bureau] to [Kang] as of the Effective Date.  This release includes all claims, whether known or unknown, asserted or unasserted, which [Kang] may currently have against the Released Parties, or that may arise in the future up to and including the Effective Date." (Doc. 149-1 at 11.)

**D.** **Notice**

The proposed notice plan provides for direct, individual notice to Class Members by both regular mail and e-mail and the maintenance of a Settlement Website.  (*See* Doc. 149 at 19; Doc. 149-1 at 8–9, 25–28.)  "To avoid any confusion, the 48 members of CCRAA Class that do not also meet the definition of the FCRA Class will receive a slightly modified version of the notice that will not give any suggestion that the individual will receive any monetary payment under the proposed settlement." (Doc. 149 at 19.)

---

1785.33, which is longer than the FCRA's 5-year statute of limitations, 15 U.S.C. § 1681p.

[4] "Effective Date" means "the date on which the Court's entry of the Final Judgment and Order and this Court's order regarding the Fee Petition have both become final because either (i) no appeals of above referenced orders have been filed and the time provided by Fed. R. App. P. 4(a)(1)(A) has lapsed, or (ii) if one or more timely appeals have been filed, all such appeals are finally resolved, with no possibility of further appellate review, resulting in final judicial approval of this Settlement." (Doc. 149-1 at 5.)

1  Class Counsel proposes that the Court appoint CDLx, who previously provided litigation

2  notice in this action, as the Settlement Administrator.  (*See* Doc. 149 at 19–20; Doc. 149-1 at 6.)

3  CDLx "has already undertaken to obtain updated mailing addresses and email addresses for Class

4  Members and already owns and maintains the website www.KangClassAction.com, to which Class

5  Members were alerted in the September 2022 notice." (Doc. 149 at 20.)  If appointed Settlement

6  Administrator, CDLx will update that site for use as the Settlement Website by posting materials

7  related to the proposed settlement, Class Counsel's anticipated Fee Petition and Motion for Final

8  Approval, and relevant settlement administration deadlines.  (*See* Doc. 149 at 20; Doc. 149-1 at 8–

9  9.)

10  Additionally, on May 19, 2023, Credit Bureau filed a certificate of service indicating that

11  CDLx sent the notice required to be served under the Class Action Fairness Act of 2005 ("CAFA"),

12  28 U.S.C. § 1715, to its intended recipients.  (Doc. 152.  *See* Doc. 149 at 20; Doc. 149-1 at 4, 9.)

13  **E.      Summary of the Settlement Terms**

14  Under the Settlement Agreement, Credit Bureau will automatically pay $1,000 to each

15  member of the FCRA Class without the need for any claim form or other response.  (Doc. 149 at

16  16; Doc. 149-1 at 10, 16.)  This amount is "independent of [Credit Bureau's] other financial

17  obligations under the proposed settlement.  That is, if the proposed settlement is approved, each

18  FCRA Class member will receive a sum certain rather than a pro rata portion of a common fund

19  against which, for example, the costs of notice and administration or Class Counsel's attorneys'

20  fees and costs would be deducted."  (Doc. 149 at 16.)  Any Class Member may request to be

21  excluded from or object to the proposed settlement.  (*See* Doc. 149 at 20; Doc. 149-1 at 12–13.)

22  If a member of the FCRA Class does not cash their payment check during the 60-day period

23  in which the checks are valid, the funds will be distributed to those FCRA Class members who

24  cashed their initial distribution checks on a pro rata basis if the sum of each check in the second

25  distribution would be at least $25 when the additional costs of preparing and mailing such checks

26  is determined.  (*See* Doc. 149 at 16.  *See also* Doc. 149-1 at 16.)  If any checks go uncashed after

27  the second distribution, the remaining sums are to be distributed to a cy pres recipient to be

28  proposed by the parties and approved by the Court and will not revert to Credit Bureau.  (*Id.*)

Under the Settlement Agreement, Credit Bureau will pay the costs of notice and settlement administration separately from its other financial obligations.  (*See* Doc. 149 at 17; Doc. 149-1 at 10, 15.)  Credit Bureau will advance $25,000 to the Settlement Administrator within 14 days after preliminary approval. (*See* Doc. 149 at 17; Doc. 149-1 at 9.)  Class Counsel estimates that notice and administration expenses, including tax reporting given the amount of each payment to FCRA Class members, will be approximately $44,000.  (*See* Doc. 149 at 17; Doc. 149-1 at 10.)

The proposed settlement also provides that Credit Bureau will pay "up to $15,000" to Kang as a "Service Award" "in recognition of his multi-year service to the Class and broad, general release of all claims." (Doc. 149 at 17; *see also* Doc. 149-1 at 10, 15.)  Credit Bureau will also not oppose Class Counsel's request for attorney's fees "in an amount not to exceed $1,620,000." (Doc. 149 at 17; *see also* Doc. 149-1 at 10, 15.) As set forth above, this amount will be paid by Credit Bureau, not by the Class, and will not reduce their statutory damages in any way.

Finally, because of Kang's lawsuit, Credit Bureau has stopped employing the name-only matching logic that associated him with the OFAC list entities in November 2017.  (*See* Doc. 149 at 16; Doc. 149-1 at 3.)

## III.   DISCUSSION

The approval of a settlement is a multi-step process.  At the preliminary approval stage, the court should grant such approval only if it is justified by the parties' showing that the court will likely be able to (1) "certify the class for purposes of judgment on the proposal" and (2) "approve the proposal under Rule 23(e)(2)."  Fed. R. Civ P. 23(e)(B).  If the court preliminarily certifies the class and finds the settlement appropriate after "a preliminary fairness evaluation," then the class will be notified, and a final fairness hearing scheduled to determine if the settlement is fair, adequate, and reasonable pursuant to Rule 23.  *Villegas v. J.P. Morgan Chase & Co.*, No. CV 09-00261 SBA (EMC), 2012 WL 5878390, at *5 (N.D. Cal. Nov. 21, 2012).  *See* Fed. R. Civ. P. 23(e)(2), (3), (5).

### A.   Class Certification

A court may preliminarily certify a settlement class if all the prerequisites of Federal Rule of Civil Procedure 23(a) have been met, and at least one of the requirements for Rule 23(b) have

1    also been met. *See* Fed. R. Civ. P. 23. Here, the Court already certified the CCRAA Class under

2    Rule 23(b)(2) and the FRCA Class under Rule 23(b)(3). (*See* Doc. 121.) The Court will not revisit

3    its analysis in this regard because the parties' proposed settlement class is identical to the classes

4    that were previously certified (*compare* Doc. 121 at 17 *with* Doc. 149 at 15). *See Ramirez v. Trans

5    Union, LLC*, No. 12-CV-00632-JSC, 2022 WL 2817588, at *3 (N.D. Cal. July 19, 2022) (where

6    class previously certified, "the only information ordinarily necessary [for preliminary certification

7    of a settlement class] is whether the proposed settlement calls for any change in the class certified,

8    or of the claims, defenses, or issues regarding which certification was granted.") (quoting Fed. R.

9    Civ. P. 23 Advisory Committee's Note to 2018 Amendment.). Accordingly, the Court grants

10   preliminary approval of the Settlement Class.

11   **B.      Preliminary Settlement Approval**

12          In determining whether a class action settlement agreement is fair, adequate, and reasonable

13   to all concerned, courts generally consider the following factors:

14          (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely
            duration of further litigation; (3) the risk of maintaining class action status
15          throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery
            completed and the stage of the proceedings; (6) the experience and views of
16          counsel; (7) the presence of a governmental participant; and (8) the reaction of the
            class members of the proposed settlement.
17

18   *In re Bluetooth Headset Prods. Liab. Litig*., 654 F.3d 935, 946 (9th Cir. 2011) (quoting *Churchill

19   Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)). Whether a settlement agreement has

20   been negotiated before a class has been certified or after, the court must also undertake an additional

21   search for more "subtle signs that class counsel have allowed pursuit of their own self-interests and

22   that of certain class members to infect the negotiations.'" *Briseño v. Henderson*, 998 F.3d 1014,

23   1023 (9th Cir. 2021) (applying *Bluetooth* red-flag factors to post-class certification settlement

24   approvals). The *Bluetooth* court identified three such signs:

25          1) when counsel receive a disproportionate distribution of the settlement, or when
            the class receives no monetary distribution but class counsel are amply rewarded;
26
27          2) when the parties negotiate a "clear sailing" arrangement providing for the
            payment of attorneys' fees separate and apart from class funds, which carries the
28          potential of enabling a defendant to pay class counsel excessive fees and costs in

8

exchange for counsel accepting an unfair settlement on behalf of the class; and

3) when the parties arrange for fees not awarded to revert to defendants rather than
be added to the class fund.

*Bluetooth*, 654 F.3d at 947 (internal quotation marks and citations omitted).

The Court cannot, however, fully assess such factors until the final approval hearing; thus, "a full fairness analysis is unnecessary at this stage." *See Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 665 (E.D. Cal. 2008) (internal quotation marks and citation omitted). At the preliminary approval stage, "the settlement need only be *potentially* fair." *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. May 31, 2007). Preliminary approval is thus appropriate where "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (internal quotation marks and citation omitted).

### 1.   Fairness Factors

#### a.   Settlement Process

The first factor concerns "the means by which the parties arrived at settlement." *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011). To approve a proposed settlement, a court must be satisfied that the parties "have engaged in sufficient investigation of the facts to enable the court to intelligently make . . . an appraisal of the settlement." *Acosta*, 243 F.R.D. at 396. Courts thus have "an obligation to evaluate the scope and effectiveness of the investigation plaintiffs' counsel conducted prior to reaching an agreement." *Id.*

Here, as indicated above, the parties engaged in three mediation sessions prior to settlement. (Doc. 149 at 13, 15.) The final mediation took place after motion practice and the completion of class certification discovery and some "key merits discovery." (*Id.* at 26.) Class Counsel had identified all possible Class Members who met the definitions certified by the Court, had obtained the computer code behind Credit Bureau's "name-only matching logic," and had already retained experts in OFAC and computer programing and databases. (*Id.*) In the Settlement Agreement, the parties recite that the settlement was reached after the parties "engaged in vigorous litigation,

9

exchanged voluminous discovery, documents, and information, and conducted multiple depositions, and it is the product of sustained, arm's length settlement negotiations and two (2) formal mediations." (Doc. 149-1 at 3.)

In view of the above, the Settlement Agreement appears to be the product of serious, informed, non-collusive negotiations. This factor thus weighs in favor of preliminary approval.

### b.   Obvious Deficiencies

The Court must next consider "whether there are obvious deficiencies in the Settlement Agreement." *See Harris*, 2011 WL 1627973, at *8. Here, the Court finds no obvious deficiencies on the face of the Settlement Agreement that would preclude preliminary approval.

### c.   Lack of Preferential Treatment

The Court must next examine whether the Settlement Agreement "provides preferential treatment to any class member." *See Villegas*, 2012 WL 5878390, at *7. Under the Agreement, all Class Members are treated equitably. Members of the FCRA Class with timely claims for statutory damages will receive $1,000 without the need to submit a claim or other response. (*See* Doc. 149-1 at 10, 16; *see also* Doc. 149 at 26.) Members of the largely overlapping CCRAA Class all benefit from Credit Bureau's practice changes that eliminate name-only matching for entities on the OFAC list. (*See* Doc. 149-1 at 3; *see also* Doc. 149 at 26.)

The Settlement Agreement also provides for a "Service Award" of up to $15,000 for Kang. (*See* Doc. 149 at 17; Doc 149-1 at 10, 15.) "Incentive awards are fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) (distinguishing incentive awards from incentive agreements, the latter of which are "entered into as part of the initial retention of counsel" and "put class counsel and the contracting class representatives into a conflict position from day one"). Service awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputation risk undertaken in bringing the action, and, sometimes to recognize their willingness to act as a private attorney general." *Id*. at 958–59. Although service awards are viewed more favorably than incentive agreements, excessive awards "may put the class representative in a conflict with the class and present a considerable danger of individuals bringing cases as class actions principally to increase their own leverage to attain a

10

remunerative settlement for themselves and then trading on that leverage in the course of negotiations." *Id*. at 960 (internal quotation marks and citation omitted).

Kang maintains that a $15,000 award is appropriate here "in recognition of his multi-year service to the Class and broad, general release of all claims." (Doc. 149 at 17; *see* Doc. 149-1 at 28.) The Court will defer ruling on the appropriateness of the amount of the requested settlement and service award until final approval.[5] However, at this stage, there is no indication that a service award of "up to" $15,000 in general constitutes "preferential treatment" such that it would defeat preliminary approval.

> ### d.      Range of Possible Approval

In determining whether the Settlement Agreement "falls within the range of possible approval," the Court must focus on "substantive fairness and adequacy" and consider the plaintiff's "expected recovery balanced against the value of the settlement offer." *See Tableware*, 484 F. Supp. 2d at 1080; *see also Harris*, 2011 WL 1627973, at *11 (noting that courts "must estimate the

---

[5] The Court observes, however, that district courts have declined to approve service awards that represent an unreasonably high proportion of the overall settlement amount or are disproportionate relative to the recovery of other class members. *See Ontiveros v. Zamora*, 303 F.R.D. 356, 365–66 (E.D. Cal. 2014) (finding an incentive award of $20,000, comprising 1% of the common fund, to be excessive under the circumstances, and reducing the award to $15,000, where class representative spent 271 hours on the litigation and relinquished the opportunity to bring several of his own claims in order to act as class representative); *see also Ko v. Natura Pet Prods., Inc*., No. C 09–2619 SBA, 2012 WL 3945541, at *15 (N.D. Cal. Sept. 10, 2012) (holding that an incentive award of $20,000, comprising one percent of the approximately $2 million common fund was "excessive under the circumstances" and reducing the award to $5,000); *Wolph v. Acer Am. Corp*., No. C 09–01314 JSW, 2013 WL 5718440, at *6 (N.D. Cal. Oct. 21, 2013) (reducing the incentive award to $2,000 where the class representatives did not demonstrate great risk to finances or reputation in bringing the class action). In reducing the award, courts have noted that overcompensation of class representatives could encourage collusion at the settlement stage of class actions by causing a divergence between the interests of the named plaintiff and the absent class members, destroying the adequacy of class representatives. *See Staton v. Boeing Co*., 327 F.3d 938, 977–78 (9th Cir. 2003); *see also Radcliffe v. Experian Info. Sols., Inc*., 715 F.3d 1157, 1165 (9th Cir. 2013).

Here, the proposed $15,000 service award appears to be excessive under the circumstances of the case. It is three times the amount that the Ninth Circuit has considered reasonable. *See Resnick v. Frank (In re Online DVD–Rental Antitrust Litig.),* 779 F.3d 934, 947 (9th Cir. 2015). It is 15 times higher than $1,000 payment to each FRCA Class Member and comprises over one percent of the total amount paid to the FRCA Class. *See Sandoval v. Tharaldson Emple. Mgmt*., No. EDCV 08-482-VAP (OPx), 2010 WL 2486346, at *9–10 (C.D. Cal. June 15, 2010) (collecting cases and concluding that plaintiff's request for an incentive award representing one percent of the settlement fund was excessive). *See also Sanchez v. Frito-Lay, Inc*., No. 1:14-cv-00797-DAD-BAM, 2019 WL 4828775, at *20–21 (E.D. Cal. Sept. 30, 2019) (recommending $10,000 incentive award payment to named plaintiff be reduced to $7,500), *report and recommendation adopted*, No. 1:14-CV-797-AWI-MJS, 2015 WL 5138101 (E.D. Cal. Aug. 26, 2015). Should Kang persist in his request for a service award that is disproportionate relative to the recovery of other class members and/or amounts to a similarly high proportion of the overall settlement payment to the class, he must provide clear and specific evidence demonstrating significant contributions to the litigation of this case.

11

1   maximum amount of damages recoverable in a successful litigation and compare that with the

2   settlement amount" in determining "the value of the settlement against the expected recovery at

3   trial") (internal quotation marks and citation omitted). "[I]t is well-settled law that a proposed

4   settlement may be acceptable even though it amounts only to a fraction of the potential recovery

5   that might be available to class members at trial." *Nat'l Rural Telecomms. Coop. v. DIRECTV,*

6   *Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004).

7       Here, the Settlement Agreement provides that each member of the FCRA Class will receive

8   $1,000 without the need for any claim form or other response. (Doc. 149 at 16; Doc. 149-1 at 10,

9   16.) Under the FCRA a prevailing plaintiff may obtain statutory damages of $100–$1,000. *See* 15

10  U.S.C. § 1681n(a)(1)(A). Thus, the automatic $1,000 payment is the maximum amount of statutory

11  damages available for a willful violation of the FCRA. Kang maintains that this is an "excellent

12  result" that "compares favorably to other FCRA section 1681e(b) class action settlements for

13  statutory damages." (Doc. 149 at 15–16 (citing *Patel v. Trans Union, LLC*, No. 14-CV-00522-LB,

14  2018 WL 1258194, at *8 (N.D. Cal. Mar. 11, 2018) (finally approving class action settlement in

15  which class members received an automatic $400 payment and could submit a claim for an

16  additional, pro rata share of a claims pool); *Leo v. AppFolio, Inc.*, No. 3:17-cv-05771-RJB, Doc.

17  62 at 7 (W.D. Wash. July 18, 2019) ($425 for successful claimants); *McIntyre v. RealPage, Inc.*,

18  No. 18-CV-03934, 2023 WL 2643201, at *2 (E.D. Pa. Mar. 24, 2023) (finally approving settlement

19  in which class members received automatic payments of approximately $300)).

20      In evaluating the reasonableness of this recovery, the Court considers the risks of continued

21  litigation. If the litigation continued, Credit Bureau has indicated that it planned to raise affirmative

22  defenses to some Class Members' claims and that it would argue that these defenses, and what

23  Credit Bureau claimed were differences in the ways its consumer reports affected different class

24  members, made the case unmanageable for trial. (*See* Doc. 122 at 6–7.) In addition, the proposed

25  settlement "creates a much faster and direct means of providing relief to Class Members than would

26  be the case if the parties proceeded with litigation," as the Scheduling Order contemplates

27  completing merits and expert discovery, another round of summary judgment briefing, and trial

28  through October 24, 2023. (*See* Doc. 149 at 25; Doc. 125.)

On balance, the risks and costs of continued litigation balanced against the maximum statutory relief recovered here, warrant preliminary approval and comment from class members.

Accordingly, consideration of the fairness factors warrants preliminary approval of the Settlement Agreement.

2.     Class Notice

For proposed settlements under Rule 23, "the court must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1); *see also Hanlon*, 150 F.3d at 1025 ("Adequate notice is critical to court approval of a class settlement under Rule 23(e).").  Due process also requires that any class member bound by a class action settlement, at a minimum, be afforded the opportunity "to remove himself from the class."  *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 848 (1999) (citation and internal quotation marks omitted).

For a class certified under Federal Rule of Civil Procedure 23(b)(3), the notice must contain, in plain and clear language: (1) the nature of the action; (2) the definition of the class certified; (3) the class claims, issues, or defenses; (4) the right of a class member to appear through an attorney, if desired; (5) the right to be excluded from the settlement; (6) the time and manner for requesting an exclusion; and (7) the binding effect of a class judgment on members of the class.  Fed. R. Civ. P. 23(c)(2)(B).  A class action settlement notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard."  *Churchill Vill.*, 361 F.3d at 575 (internal quotation marks and citations omitted).

As discussed above, the proposed notice plan provides for direct, individual notice to Class Members by both regular mail and e-mail and the maintenance of a Settlement Website.  (*See* Doc. 149 at 19; Doc. 149-1 at 8–9, 25–28.)  The notice (1) describes the nature of the lawsuit and claims at issue, (2) defines the classes, (3) explains the amount of the settlement payments, (4) discloses the amount of attorney's fees and the service award to be requested, (5) explains right of a Class Member to appear through an attorney, if desired; (6) explains how a Class Member can request exclusion from the settlement, (7) explains how a Class Member can object to the settlement, (8) describes the binding effect of a class judgment on the Class members, (9) discloses the time and

place of the final approval hearing, and (10) displays the contact information for Class Counsel. (*See* Doc. 149-1 at 25–28.)  The 48 members of CCRAA Class that do not also meet the definition of the FCRA Class will receive a slightly modified version of the notice that "will not give any suggestion that the individual will receive any monetary payment under the proposed settlement." (Doc. 149 at 19.)

CDLx has already performed address updating for each Class Member and will use the National Change of Addresses Database prior to sending notice of the proposed settlement.  (*See* Doc. 149-1 at 8; Doc. 149 at 28.)  Any mailed notices that are returned as undeliverable shall be re-mailed to updated addresses provided by USPS and/or through a commercial search firm or database.  (*See id*.)

The notice will also be available on the Settlement Website along with other relevant litigation documents, the Settlement Agreement, an Exclusion Request Claim Form, and the Fee Petition once it is filed.  (*See* Doc. 149-1 at 8–9; Doc. 149 at 28.)

In sum, these procedures appear sufficient to ensure that class members receive adequate notice of the settlement and an opportunity to object.  Accordingly, the notice and the notice plan support preliminary approval.

3.     Attorney's Fees and Costs

Reasonable attorneys' fees and costs are allowed under the FCRA, 15 U.S.C. § 1681n(a)(3), and Federal Rule of Civil Procedure 23(h).  However, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount."  *Bluetooth*, 654 F.3d at 941; *see also Staton*, 327 F.3d at 963 ("[A] district court must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement.").  Use of the lodestar method is appropriate to calculate attorneys' fees under a federal fee-shifting statute like the FCRA.  *See Tahara v. Matson Terminals, Inc*., 511 F.3d 950, 955 (9th Cir. 2007); *see also Staton*, 327 F.3d at 965; *Yeagley v. Wells Fargo & Co*., 365 F. App'x 886, 887 (9th Cir. 2010) ("Under a fee shifting statute such as the FCRA . . . the lodestar method is generally the correct method for calculating attorneys' fees.").

Here, the parties have agreed to pay Class Counsel's attorney's fees and costs in an amount

14

1   not to exceed $1,620,000.  (*See* Doc. 149 at 17; Doc. 149-1 at 10, 15.)  As set forth above, this

2   amount will be paid by Credit Bureau, not by the Class, and thus will not reduce their statutory

3   damages.  (*See* Doc. 149 at 16.)

4          As with the service award, the Court will take up the award of attorney's fees and costs, at

5   the final approval stage.  Class Counsel will file a motion for fees and costs including declarations

6   with detailed billing records and an itemized summary of each category of costs so that the Court

7   may determine an appropriate lodestar figure and whether costs are reasonable expenses incurred

8   for the benefit of the class, and to allow class members the opportunity to object to the requested

9   fees and costs.[6]  *See In re Mercury Interactive Corp. Sec. Litig.,* 618 F.3d 988, 995 (9th Cir. 2010)

10   (holding that class members must "have an opportunity to oppose class counsel's fee motion"

11   before the deadline for filing objections set forth in the class notice).

12                    **IV.        CONCLUSION AND ORDER**

13          For the reasons stated above, IT IS HEREBY ORDERED THAT:

14      1.      Plaintiff Sung Gon Kang ("Kang")'s unopposed motion for preliminary approval of

15              a class action settlement (Doc. 148) is granted;

16      2.      The hearing on the motion, set for June 7, 2023, is vacated;

17      3.      The proposed classes identified in the Settlement Agreement (Doc. 149-1 at 4, 5)

18              are certified for settlement purposes;

19      4.      Kang's counsel, Caddell & Chapman, and Francis Mailman Soumilas, P.C., are

20              appointed as co-Class Counsel for settlement purposes;

21      5.      Kang is appointed as the Class Representative for settlement purposes;

22      6.      Continental Datalogix is appointed as the Settlement Administrator for providing

23              Class Notice and otherwise assisting in administration of the Settlement;

24      7.      The proposed notice and notice plan (Doc. 149-1 at 8–9, 25–28) is approved in

25              accordance with Federal Rule of Civil Procedure 23;

26

27   _____
[6] The Settlement Agreement also provides that Credit Bureau pay the costs of the Settlement Administrator, currently
estimated at $44,000, for the purpose of providing notice to Class Members and settlement administration.  (*See* Doc.

28   149 at 17; Doc. 149-1 at 10.)

8.    The proposed settlement (Doc. 149-1) detailed herein is approved on a preliminary basis as fair and adequate;

9.    Within five days of this Order, Credit Bureau shall provide the Settlement Administrator with updated mailing address information for Settlement Class Members;

10.   Within 14 days of the date of this Order, Credit Bureau shall transfer $25,000 to the Settlement Administrator to effectuate the Class Notice Plan;

11.   Within 21 days of the date of this Order, the Settlement Administrator shall provide notice to the class in accordance with the Notice Plan.

12.   The deadline for the Settlement Administrator to file a declaration attaching a copy of the notices ultimately sent to the classes and describing the notice process is August 1, 2023.

13.   The deadline for filing the motion for attorney's fees, costs, and service award is August 1, 2023.

14.   The deadline for class members to object to the proposed settlement and/or the motion for attorney's fees, costs, and service award is August 31, 2023.

15.   Kang shall file his motion for final approval of the proposed settlement by September 20, 2023.

16.   The hearing for final approval of the proposed settlement is set for October 25, 2023, at 9:30 a.m. in Courtroom 7 (SKO) before Magistrate Judge Sheila K. Oberto.  The Court reserves the right to vacate the hearing and take the matter under submission (*see* E.D. Cal. L.R. 230(g)) in the event no objections to the proposed settlement and/or the motion for attorney's fees, costs, and service award is received by the Settlement Administrator or filed with the Court.

IT IS SO ORDERED.

Dated:  __**June 1, 2023**__              _____*/s/ Sheila K. Oberto*_____
                                         UNITED STATES MAGISTRATE JUDGE

16